Statement.

## Staunton.

### GEORGE BURNHAM, JR., v. MARY J. JAMES.

September 12, 1902.

1. LACHES—*Case in Judgment—Statute of Limitations.*—Equity will some-
times afford relief when a shorter period than that prescribed by
the statute of limitations has elapsed without suit, and the creditor
has been guilty of gross laches, but in the case in judgment the
preponderance of evidence shows that the debtor was embarrassed
to insolvency; that the creditor was his sister, and her debt well
secured by a lien on real estate; that she held the notes evidencing
the debt, with no credit endorsed; that the debt has not been paid,
and that this suit was instituted eight years before the debt was
barred by the act of limitations. Under these circumstances, it can-
not be said that the creditor has been guilty of such laches as
would justify a court of equity in refusing affirmative relief for the
enforcement of the collection of the debt.

Appeal from a decree of the Corporation Court of the city of
Bristol, pronounced December 12, 1901, in a suit in chancery,
wherein the appellee, Mary J. James, was the complainant, and
the appellant and others were the defendants.

*Affirmed.*

The bill was filed to enforce a lien reserved in a deed from
W. W. James and wife to Jones & Bailey for two notes given
for an interest in land, a part of which had come, by subsequent
conveyances, into the possession of appellant. The deed was a
quit-claim deed, without covenants of warranty. On demurrer,
it was insisted that the notes described in the bill did not corre-
spond in amounts with the notes mentioned in the deed, and that

the recitals in the deed showed that the grantor did not have full title to the property conveyed, and in fact cast a cloud on the title. The notes were not particularly described in the deed, but substantially corresponded with the description given in the deed. The granting, or release, clause in the deed was in the following words: "And in consideration of the foregoing the said W. W. James, Sr., doth hereby release, transfer and quit-claim all his right, title or interest in the properties stated to the said J. M. Bailey and W. D. Jones, their heirs and assigns forever." The demurrer was overruled.

*Fulkerson, Page & Hurt,* for the appellant.

*Bailey & Byars* and *John W. Price,* for the appellee.

HARRISON, J., delivered the opinion of the court.

On the 1st day of September, 1887, W. W. James, Sr., sold and conveyed certain lots in the city of Bristol to John M. Bailey and W. D. Jones, jointly. The two grantees executed their separate notes to the grantor, each for one-half the purchase money, and the deed was duly recorded, reserving on its face a vendor's lien to secure the purchase money. By deed dated January 23, 1888, W. D. Jones conveyed his undivided half interest in these lots to his joint owner, John M. Bailey. After passing through several successive alienations the lots mentioned were conveyed on the 19th day of September, 1893, by William McGeorge, Jr., and wife to the appellant, George Burnham, Jr.

This suit was brought in October, 1899, by Mary J. James, as assignee of her husband, W. W. James, Sr., to enforce the payment of two purchase money notes executed by W. D. Jones, one of the two original purchasers of the lots from W. W. James, Sr. It is not denied in this proceeding that the two notes executed by John M. Bailey, the joint purchaser with W. D. Jones, have been paid off and discharged.

There was no error in overruling the demurrer to the bill. A case calling for equitable relief was stated, and the grounds of demurrer suggested were matters of defence rather than cause for denying relief in advance of the evidence necessary to be taken.

.That the complainant, Mary J. James, was the lawful assignee for value of the notes sued on is supported by full and complete proof.

The court did not err in excluding the testimony of S. V. Fulkerson, A. Fulkerson, John M. Jones and William McGeorge as to the statements they claim to have heard one William Wallace make about the transaction under consideration. This evidence was clearly hearsay and inadmissible for any purpose. The chief defence relied on was that the two notes sued on, which were executed by W. D. Jones to W. W. James, Sr., had been paid; and that the complainant had been guilty of such laches in prosecuting her suit to enforce collection, that a court of equity would not grant relief. A careful examination of the record discloses no circumstances that can be invoked to justify the presumption that the notes were paid. On the contrary, the preponderance of evidence is to the effect that they have not been paid. It is not pretended that any one of the successive purchasers of these lots from W. D. Jones has at any time paid these notes. The contention is that Jones at some time paid them. The notes themselves are in the possession of the appellee, Mary J. James, without credit or endorsement. The deed retaining the vendor's lien duly recorded is not marked satisfied; and the evidence shows that the appellant and his predecessors in title took a conveyance of the land in question, not only with constructive notice of this recorded vendor's lien, but with actual notice that the record disclosed such a lien not marked satisfied. Not one dollar is shown to have been set apart by anyone for the payment of these notes, nor has one dollar been traced to their payment. Mary J. James, the owner of the notes, says they are

not paid. W. W. James, the assignor of the notes, says they are not paid, and W. D. Jones, the maker of the notes, a short while before his death, said in the presence of three witnesses that the notes were not paid. The only direct evidence tending to establish their payment is the statement of McGeorge, the grantor of the appellant, that W. W. James had told him they were paid. This statement is emphatically denied by W. W. James, and is irreconcilable with the admission of the maker of the notes against his own interest, in the presence of three witnesses, that the notes were unpaid. W. D. Jones, the maker of the notes, was the brother of the appellee, Mary J. James. While reputed to be a very rich man at the time he executed the notes sued on, the fact is abundantly established that he was a speculator in real estate, and a debt-maker and not a debt-payer. It appears that, at the time he made the purchase in question from W. W. James, he was very heavily in debt, and hard pressed; that his large indebtedness continued to increase in volume until he died in July, 1890, leaving many thousands of dollars due, and no assets with which to pay. During the three years that he lived after executing the notes in question he was using the credit of his brother-in-law, James, in bank to raise money to aid in keeping him afloat. In brief, the whole record represents Jones as a hard-pressed person financially, and in a bankrupt condition. It could hardly be presumed under such circumstances that this debtor paid his sister whose debt was well secured, and whom he could more easily postpone than his clamorous unsecured creditors.

The vendor's lien here sought to be enforced will be not barred under the statute until 1907, and this suit was brought in 1899, eight years before the claim was barred. Equity will sometimes refuse relief where a shorter term than that prescribed by the statute of limitations has elapsed without suit; but no such laches appear in this case as would justify a denial of relief to the appellee. Mrs. James doubtless knew of her brother's embarrassed financial condition, as he was staying a large part of the

time at her house, and did not care to enforce her claim during the three years that elapsed before his death. After his death, suits were brought involving a settlement of his estate, and an investigation into the extensive purchases of real estate made by him in several states, and it was not for some time that it was known that the real estate would not pay the purchase money liens thereon, and that the estate was hopelessly insolvent.

For these reasons the decree appealed from must be affirmed.

*Affirmed.*