# Wytheville.

## Davis' Administratrix v. Davis and Others.

June 15, 1905.

Absent, Cardwell, J.

1. LIMITATION OF ACTIONS—*Suspension—Conditional Payments—Collaterals.*—Whether a note of a third person given for a pre-existing debt of the transferrer is a discharge of the pre-existing debt, or a collateral security for it, or a conditional payment of it, is a question of intention of the parties. If given as a conditional payment it suspends all right of action on the original debt until the note so transferred has been dishonored by non-acceptance, or non-payment. The note taken in conditional payment becomes, by its dishonor, a collateral security, which the creditor may retain and endeavor to collect, without forfeiting the right to proceed on the principal cause of action, subject to the obligation of surrendering up the note at the trial.

2. LIMITATION OF ACTIONS—*Bonds—Code, Sec. 2938.*—Under the provisions of Sec. 2938 of the Code the limitation to an action on a bond dated and due prior to May 1, 1888, and upon which no action was then pending, is twenty years from its maturity, notwithstanding the death of the obligor in 1889.

3. LACHES—*Obscurity of Transaction.*—The defense of laches cannot prevail where the transaction has in no wise become obscure by the lapse of time or the loss of evidence and the sum sought to be recovered is susceptible of exact ascertainment.

4. ESTOPPEL.—*Failure to Collect Debt—Change in Property Values.*—A creditor cannot be held responsible for a loss occasioned by a fluctuation in the values of his debtor's property such as a failure to enforce the collection of his debt during "the boom period." The consequences of the failure of the debtor to pay his debt cannot be visited on the creditor.

5. ESTOPPEL—*Inconsistent Positions in Litigation—Case in Judgment.*—The facts contained in the record of this cause do not sustain the contention that appellees have assumed inconsistent positions in this litigation. The lack of proper parties to one of the suits prevented them from asserting

their claim against the person, and in the time and manner it is claimed it should have been done ; and the mode of procedure adopted by them has not injuriously affected or prejudiced the rights of appellants.

Appeal from a decree of the Chancery Court of the city of Richmond in three chancery causes heard together. In one of these the appellees, Henry G. Davis and Thomas B. Davis, were the complainants. The decree was in their favor. This appeal was taken by the personal representatives of John B. Davis and Joseph B. Davis, whose estates were affected, and by two of the creditors of Joseph B. Davis.

*Affirmed.*

The opinion states the case.

*Jo. Lane Stern* and *Henry R. Pollard,* for the appellants.

*Smith, Moncure & Gordon,* for the appellees.

WHITTLE, J., delivered the opinion of the court.

The decree appealed from was passed by the Chancery Court of the city of Richmond in three suits in equity pending in that court and heard together. These causes are creditors' suits— the first two against the estate of Joseph B. Davis, deceased, who was a son and devisee under the will of John B. Davis, and the last against the estate of John B. Davis, deceased.

The appellees, Henry G. Davis and Thomas B. Davis, are creditors of both estates ; and as creditors of the son's estate presented and had audited their debts against it in the two first named causes. In these two suits the real estate of Joseph B. Davis, other than that derived from his father, was sold and the proceeds administered. But the court at that time refrained from selling the residue, because the life estate of the widow of John B. Davis intervened. Subsequently, the life estate having fallen in, the undivided one-third interest of Joseph B. Davis in his father's lands was decreed to be sold, the decree

reciting: "It . . . appearing to the court that the said sale may now be made with propriety, since the death of Elizabeth B. Davis, the life tenant of said property under the will of John B. Davis, deceased." Accordingly, the owners of the remaining undivided two-thirds interest having united in the sale with the special commissioners, the whole of the real estate of which John B. Davis died seized was sold. Thomas B. Davis, one of the appellees, became the purchaser of seventy-three acres at the price of $2,920.

This was the status of affairs in 1901, when appellees, as creditors of the estate of John B. Davis, deceased, instituted suit against his personal representative and devisees to subject his property to the payment of their debt. To that suit the defendants interposed the defenses of the statute of limitations, laches, and estoppel.

A statement of the facts in connection with the origin of appellees' debt is essential to an intelligent apprehension of these several defenses. Appellees and John B. Davis were brothers. The two former are residents of the State of West Virginia, while the latter resided in Richmond, Virginia. John B. Davis became financially embarrassed, and on September 22, 1882, appellees loaned him the sum of $70,000, for which he executed his bond, payable on demand. On March 1, 1888, John B. Davis and his two brothers met at Piedmont, West Virginia, when it was agreed that John B. Davis should deliver to appellees certain notes held by him against third parties, together with a life insurance policy and a check, aggregating $35,000, upon the stipulation that the securities "when and if paid shall be in full settlement of the said note for $70,000." The agreement was signed in duplicate, and a schedule of the notes, and notes corresponding to the schedule, were delivered to appellees. The notes matured from time to time during the period from March 21, 1888, until October 15, 1896. The bulk of these assets was collected, and the residue, the precise amount of which has not been ascertained, constitutes the subject matter of this litigation.

John B. Davis died in January, 1889, leaving his estate to his widow for life, with remainder in equal shares to his two surviving children and a grandchild. The personal assets were duly administered, and the proceeds of sale of the real estate have been deposited in bank to await the result of this appeal.

The contention that the demand is barred by the statute of limitations is founded upon a proviso to section 2920 of the Code of 1887, which went into effect May 1, 1888, and is as follows: "Provided, that the right of action against the estate of any person hereafter dying, on any such award or contract, which shall have accrued at the time of his death, or the right to prove any such claim against his estate in any suit or proceeding, shall not, in any case, continue longer than five years from the qualification of his personal representative, or if the right of action shall not have accrued at the time of the decedent's death, it shall not continue longer than five years after the same shall have so accrued."

In this instance while, as shall be seen presently, the right of action did not accrue until after the death of John B. Davis, still as suit was brought within five years after such right did accrue, the debt would not have been barred even if the proviso applied to the case.

In Daniel on Negotiable Instruments it is said: "When a bill or note is taken for or on account of a debt, the question arises whether it was taken in absolute discharge of it and operates as a complete merger, or simply as a collateral security, or in suspension of the debt, during its currency. The intention of the parties is the controlling element. And if there be any distinct agreement on the subject, all controversy is silenced. But when no particular intention is manifested, and no express or implied agreement appears, the question is to be solved by principles of law which make presumptions as to the intention of the parties according to the circumstances of each particular case." *2 Daniel on Neg. Instr.* (5 Ed.), sec. 1259.

At section 1272 the learned author observes: "There is no

'doubt that a negotiable bill or note given for or on account of a contemporaneous or pre-existing debt, and whether or not it be in renewal of a previous bill or note, suspends all right of action on such debt during its currency—that is, until it is dishonored by non-acceptance or non-payment. If this were not so, the creditor who took the additional security, in the form of a bill or note, might, in consequence of its negotiable character, transfer it to a *bona fide* holder, and subject the debtor to payment of both the original and the new debt.

"But as soon as the bill or note is dishonored, the original debt revives, and the creditor may pursue his remedy for it, or sue upon the bill or note. The bill or note taken in conditional payment becomes, by its dishonor, a collateral security, which the creditor may retain and endeavor to collect, without forfeiting the right to proceed in the principal cause of action, subject to the obligation of surrendering up the bill or note at the trial." See also *Armistead* v. *Ward,* 2 Pat. & H. 504; *McCluny* v. *Jackson,* 6 Gratt. 96; *Blair & Hoge v. Wilson,* 28 Gratt. 165; *Lewis* v. *Davisson,* 29 Gratt. 216, at 226; *Callaway* v. *Price,* 32 Gratt. 1

The doctrine with respect to the delivery of bills or notes as conditional payments is not to be confounded with the mere deposit of collateral securities to secure payment of the principal debt. In the latter case, in the absence of agreement to the contrary, the pledgee's right of action on the principal debt and the right to enforce payment of the collateral security are concurrent rights, both of which may be pursued until the debt is paid. *Colebrooke on Collateral Securities* (2nd Ed.), ss. 104, 105, 106, and notes; *2 Daniel on Neg. Instr.,* s. 1260, n. 4, and authorities cited.

In this case it was obviously the intention of the parties that the promissory notes in question should be treated as conditional payments, and suspend, during their currency, the right of action on the original debt. That was the legal effect of the contract, and a different construction would have defeated

its purpose.   This being the effect of the agreement, the cause
of action had not accrued (was suspended) at the time of John
B. Davis' death.

But we are of opinion that inasmuch as suit was not pend-
ing on the day before the Code took effect, the case is controlled
by section 2938 of the Code, which provides that where the
action was not pending on the day before the Code took effect,
it "may be prosecuted within such time as the same might have
been prosecuted if this chapter had not been enacted, and not
after."

The period of limitation was twenty years on a writing under
seal prior to the Code of 1887; the original bond is dated Sep-
tember 22, 1882, and the right of action thereon was not barred
until September 22, 1902, more than a year after the institu-
tion of this suit.   So that in neither aspect of the case can the
plea of the statute of limitations avail.

The remaining defenses of laches and estoppel are not sus-
tained by any fact or circumstance in the case.   That appellees
were not dealing at "arm's length" with their brother, and after
his death with his widow, is manifested on every page of the
record.   When overtaken by financial reverses, they came to
his relief and loaned him $70,000 without security, and after-
ward forgave him one-half the debt, receiving promissory notes
and other securities in conditional satisfaction of their demand.
These securities were collected from time to time until the in-
debtedness of $35,000 was reduced to the amount now in con-
troversy.   It is not pretended that the debt has been paid from
any other source; and the fact that uncollected and uncollectable
collaterals, representing the balance claimed, are still in the
hands of appellees shows that it has never been paid.   John B.
Davis died within less than a year after the agreement of March,
1888, was entered into, and, as remarked, by his will left the
whole of his estate to his wife for life.   She was a nervous,
delicate woman, and it is reasonable to presume that the same
considerations which influenced appellees to assist and indulge

their brother also induced them to allow his widow to remain in the undisturbed possession of the property during the continuance of her life estate.

In thus indulging her they kept within their legal rights, and instituted this suit in less than two years after her death. In the meantime the transaction had in no wise become obscure by lapse of time or loss of evidence, and the sum sought to be recovered is susceptible of exact ascertainment. That under such circumstances the defense of laches cannot prevail, has been settled by repeated decisions of this court. *Jameson* v. *Rixey,* 94 Va. 342, 26 S. E. 861, 64 Am. St. 726; *Bell* v. *Wood,* 94 Va. 677, 27 S. E. 504; *Burnham* v. *James,* 100 Va. 493, 42 S. E. 292; *Tidball* v. *Bank,* 100 Va. 741, 42 S. E. 867.

The defense of estoppel is equally without merit. The chief ground of complaint in that connection is based on the theory that loss has accrued to appellants by reason of the failure of appellees to enforce the collection of their debt during the years 1890 and 1891 (the boom period), when, it is said, the proceeds of sale of a few acres of the debtor's land would have satisfied the demand.

As has been seen, appellees' right of action was suspended during those years by the agreement of March, 1886; but if such had not been the case, the proposition proceeds upon the false premise that a creditor can be held responsible for loss occasioned by fluctuation in property values. Payment of the debt affords the debtor adequate protection against loss from such contingency, and the consequences of his failure to look after his own interests cannot be visited upon his creditor.

The remaining suggestion, that appellees have assumed inconsistent positions in the litigation, which ought to estop them from setting up the present demand, is not sustained by the record.

The alleged inconsistency is founded upon the circumstance that appellees did not assert their debt against the estate of John B. Davis, deceased, in the two first named causes, and

suffered a decree to be rendered therein, subjecting the interest of Joseph B. Davis, deceased, in the lands derived from the estate of his father to be sold; and that Thomas B. Davis, one of the appellees, became the purchaser of one of the lots.

Appellees had no notice of the decree directing a commissioner to inquire and ascertain whether there was any liability on the estate of Joseph B. Davis, deceased, on account of assets acquired by him under the will of his father, nor of the report returned in pursuance of that decree. And even if they had received such notice, they could not have asserted their debt against the estate of John B. Davis, deceased, for the reason that his personal representative was not a party to the litigation. They, therefore, pursued the correct practice of filing a creditors' bill against his estate; and when the suit was matured, for obvious reasons, it was brought on to be heard with the other two causes.

It is not perceived that the course thus pursued by appellees has injuriously affected or prejudiced in any manner the rights of the appellants.

The following extract from the answer of the personal representative of John B. Davis sufficiently attests the meritoriousness of appellees' demand:

"In making the foregoing defenses to the complainants' claim, respondent has done so only because she has been advised that it was her imperative duty as administratrix. For whatever may be the legal merits or demerits of complainants' claim, respondent feels bound to put on record her acknowledgment of the great kindness of complainants to her late father in the transactions out of which said claim arose, and the high character, from a moral standpoint at least, of the claim itself."

The decree of the Chancery Court is without error and must be affirmed.

*Affirmed.*