# Staunton

LLOYD C. GILLEY, ET ALS. V. NANCY J. NIDERMAIER.

September 5, 1940.

Record No. 2280.

Present, All the Justices.

The opinion states the case.

*S. H. Bond* and *E. H. Richmond,* for the appellants.

*Philip M. Flanagan* and *J. E. Kelly,* for the appellee.

GREGORY, J., delivered the opinion of the court.

This appeal brings before us the construction of clause IV of the will of J. B. Gilley, who died on December 11, 1923. The will is set out at large in order that it may be considered as a whole in ascertaining the testator's intention. It was admitted to probate in 1923, and is in the following language:

"I. I will and direct that my executor, hereinafter named, pay all my just debts, if I shall owe any, the costs of administration and my funeral expenses.

"II. In the event my beloved wife, Mrs. Nannie E. Gilley, outlives me, I will and direct that she shall have a home at my residence in Gate City, Scott County, Virginia, and that she be properly and comfortably supported. Her proper and comfortable support is made a charge upon my estate. My intention is that she shall be properly and comfortably supported as long as she lived.

"III. As to my real estate, I dispose of it as follows:

1. I will and devise to my daughter Myrtle O. Johnson, the house and lot where I now live, it is bounded on the north by the alley running to the cemetery, between my property and the M. T. Hash property, on the east by the street running north from Main Street and west of the Court House, on the south by the lot formerly owned by Mrs. J. M. Minnich and on the west by the cemetery.

2. I will and devise to my son Lloyd C. Gilley, the house and lots I bought of E. Thompson Carter and I refer to the deed from him to me for a description of the property.

As there is a difference in value between the property devised to my daughter, Myrtle O. Johnson, and the property devised to my son, Lloyd C. Gilley, I will and bequeath to my son Lloyd C. Gilley, in order to make them equal, the stock of general merchandise, now at what is *know* as the Blue Store on Big Moccasin Creek in Scott County, Virginia, and my shares of stock in the First National Bank of Gate City, Virginia.

"IV. I will and direct that my son, Lloyd C. Gilley pay to Effa *Niedemeyer,* formerly Effa Ratliffe the sum of One Thousand Dollars, which shall be paid within three years from the date of my death.

I will and direct that my daughter Myrtle O. Johnson pay to Lorraine Ratliffe the sum of One Thousand, which shall be paid within three years from the date of my death. If Lorraine is still a minor at my death, the money shall be paid to her *gardian,* if she has one. If she has not, then

the money shall be placed in a good bank on a time certificate for her.

"V. I will and bequeathe all my personal estate of whatever kind or description except what is necessary to pay my debts, costs of administration and funeral expenses, and except the stock of general merchandise and the bank stock hereinbefore *will* and *re*queathed to my son, *Loyd* C. Gilley, to my two children, Myrtle O. Johnson and Lloyd C. Gilley to be equally divided between them.

"VI. I am now endorseing notes for both of my children and if I should have to pay anything for either of them then such sum or sums, whatever it may be, shall be deducted from his or her share of my estate, so as to make them equal.

"VII. This is my will and there shall be no litigation over it. Any one seeking by litigation or other wise to set aside or annul my will or any part of it, shall not receive any thing and his or her share, bequest or devise shall go to the other party or parties in the manner herein provided, that is such share shall go back to and become a part of my estate to be disposed of as herein provided for the other parties."

The testator left surviving him his widow and two children, Mrs. Myrtle O. Johnson and Lloyd C. Gilley. He also had two stepdaughters, Effa Nidermaier, formerly Effa Ratliffe, and Lorraine Ratliffe. His estate amounted to some $19,000, and consisted of personalty and realty. After the payment of the debts of the estate in accordance with the direction of the testator and the distribution of the personal property specifically bequeathed to the son, Lloyd C. Gilley, in clause III (2), there remained only $39.01 to be divided between the two children under clause V of the will.

In 1931 Lloyd Gilley conveyed all of his property both real and personal to his wife Lois Gilley in consideration of love and affection. In 1933 Lois Gilley and her husband Lloyd conveyed the real estate to H. F. Addington for $2,500, payable by the cancellation and surrender of an

interest-bearing note of $1,440.80 made by Lloyd Gilley and payable to Addington, and the balance was paid in cash.

The legacy of $1,000 directed to be paid by the son Lloyd to the step-daughter Effa Nidermaier in clause IV was never paid. She died intestate in 1934, leaving a daughter, Nancy Nidermaier, as her sole heir at law. As such the latter filed a bill of complaint against Lloyd C. Gilley and Lois E. Gilley, his wife, and H. F. Addington, seeking to have the legacy made to her mother charged as a lien on the realty devised to the son Lloyd and now owned by Addington.

In 1937 Lloyd Gilley filed his petition in bankruptcy and listed as one of his obligations the $1,000 legacy due the mother of the appellee. The personal liability for the payment of the legacy was wiped out by a discharge in bankruptcy granted him in 1938. However, the discharge discloses that the claim that the legacy was a charge or lien on the land devised to him was not considered by the court of bankruptcy, it being advised that this matter was exclusively one for the State courts.

The present suit was instituted April 25, 1938, some fifteen years after the death of the testator and about twelve years after the expiration of the three-year period fixed by the testator for the payment of the legacy.

The defendants below, the appellants here, filed a demurrer and answer. The gist of their defense was that the testator created no charge upon the realty for the payment of the legacy, that it was only a personal obligation, and that in any event the legacy was barred by the statute of limitations.

The court rejected the defenses and decided that the legacy was a lien upon the real estate, that the purchaser H. F. Addington had constructive notice of the lien, since the will had been properly recorded in the county where the land lay, and that the statute of limitations was not applicable.

There are but two questions involved here: First, was the payment of the legacy made a charge upon the lands

of the devisee; and, second, was the charge or lien, if created by the testator, barred by the statute of limitations? The personal obligation of Lloyd Gilley to pay the legacy has been discharged in bankruptcy and is not now before us.

It is perhaps significant that the testator desired that his widow should have a home and be afforded proper and comfortable support. For the purpose of securing this benefit to her he made, in clause II of the will, her "proper and comfortable support" a charge upon his estate. This charge was not only upon his realty but also upon his personalty. In clause IV of the will the two legacies of $1,000 each were not expressly made charges against his estate. It is argued that inasmuch as the testator expressly made the support of his widow a charge upon his estate in the first instance and failed so to charge the estate passing to his two children with the payment of the two $1,000 legacies in favor of his step-children, this circumstance indicates that he did not intend to charge the realty devised to his children with the two legacies.

However, there is language in the will which, together with the attendant circumstances, is sufficient to charge the realty with these legacies. The legacy in favor of Lorraine Ratliffe, to be paid by the testator's daughter, Myrtle O. Johnson, is not in question in this case. However, the testator must have known that if his daughter were to pay this legacy out of her share of the estate, it would have to be paid from the sale of the realty, or from funds borrowed on it. No personalty was left to her from which payment of the legacy might be made. We therefore conclude that the testator contemplated that the legacy should be paid from the realty, and thus impliedly charged the legacy on the real estate left to his daughter.

Similarly, the testator must have intended that the legacy over which the present litigation arose should be a charge on the realty left to his son. Both legacies are created in the same section of the will, and the testator expressed in clear language his intention that the step-children should receive legacies of equal value. just as he indicated, else-

where in the will, that his own children should receive equal shares in his estate.

When we apply the principle of equality between his children, and see that the daughter's portion of the realty was impliedly charged with the payment of a $1,000 legacy, we must conclude that the testator also intended to charge the son's portion of the realty with the $1,000 legacy payable to the appellee's mother. Both daughter and son were directed to pay a $1,000 legacy, and it is untenable to assume that the testator intended to charge the daughter's realty in this respect and not to make a similar charge on the realty of the son.

Clause VII is very significant. If the widow or either child or step-child should seek to set aside or annul the will or any part of it such person would forfeit his devise or legacy and receive nothing. In this case the son Lloyd will have "set aside" a portion of the will if he is permitted to evade the payment of the legacy. Of course the portion of the estate received by him cannot be forfeited, because he no longer has it, but the court can follow the realty and impress it with a lien in favor of the legatee as long as the realty is not in the hands of a *bona fide* purchaser. Here, as already stated, the purchaser had constructive notice of the legatee's claim.

The devises and the legacies were inseparably joined in this will. When the devisees accepted their devises they at the same time became obligated to pay the legacies. If the devisees failed to pay the legacies as directed the testator intended their devises to be forfeited under clause VII.

Our Virginia court has not squarely passed upon the question presented here. However, in *Armentrout* v. *Armentrout's Ex'rs,* 112 Va. 660, 72 S. E. 721, and in *Wenner* v. *George,* 129 Va. 615, 106 S. E. 365, it has at least incidentally held that where property is devised and the devisee is directed to pay a legacy or legacies and he accepts the devise he not only becomes personally obligated to pay the legacy but it also becomes a charge upon the

land devised. It may be sold to enforce the payment of the legacy.

In *Armentrout* v. *Armentrout's Ex'rs, supra,* the testator devised his estate to his wife for life with remainder in fee to five of his children. He directed these children to pay $400 each to his other three children. Suit was brought by the beneficiaries of the $400 payments against the five remaindermen during the lifetime of the life tenant. The court held that the payments were not due and payable until after the death of the life tenant and for that reason denied a recovery. However, the court observed, "The will gives the appellees the estate in remainder, after the expiration of the life estate of their mother, and nothing more, and it requires the appellees to pay the appellants $400 each, thus making these sums a charge upon the estate in remainder of the appellees and upon no other estate." [112 Va. 660, 72 S. E. 721.]

In *Wenner* v. *George, supra,* the testator devised lands to his son for life provided he would pay his sister $4,000 within ten years. He further provided that any legatee signifying an intention not to abide by the provisions of the will should forfeit his interest. The court held that the life tenant was personally obligated to pay the $4,000, he having accepted the devise. The court, speaking through Judge Prentis, concluded: "It is perhaps immaterial in this case that the trial court failed to hold that the legacy constituted a charge against the life estate of Ashland C. George, because the record appears to indicate that Ashland C. George is financially able to pay the amount. The trial court, however, should have followed the precedents indicated by the cases of *Jackson* v. *Updegraffe,* 1 Rob. (40 Va.) [107], 114, and *Cockerille* v. *Dale's Adm'r,* 33 Gratt. (74 Va.) 45, and held that the life estate devised to Ashland C. George was an auxiliary security for this legacy and charged therewith as the only property indicated by the testator for its payment." [129 Va. 615, 106 S. E. 367.]

Beyond the Virginia jurisdiction the authorities are overwhelming in holding that legacies similar to the one here

involved are charges upon the land devised. The annotators and cases are almost in one accord. In 62 A. L. R., there is an exhaustive annotation. The annotator says (pp. 596, 597): "The courts have, wherever possible, construed a provision for the payment of a legacy, or a sum of money, as a charge rather than a condition precedent, in order that the estate may vest in the devisee. Thus, where it appears from the language of the will that the testator intended to couple the payment of the legacy by the devisee with the devise of the land, so that the payment is to be made, because, or as a condition on which, the devise has been made, then the real estate is, in equity, chargeable with the payment of the legacy."

Again, in 116 A. L. R. 22, the rule is reiterated in this language: "By imposing upon a devisee of real estate the payment of a legacy, a charge is created against the devised land, which is therefore made primarily liable for the payment of such legacy. That is to say, when a legacy is charged on lands devised by the testator's will, it becomes a lien which may be enforced against the land itself." And 116 A. L. R. 22: "The personal liability of the devisee does not discharge the real estate from the lien of the charged legacy. That is to say, the right to enforce the lien of a legacy charged on land against the land itself exists notwithstanding the devisee's personal liability." These quotations are supported by a host of cases from nearly every jurisdiction.

In 69 C. J., section 2506 (pp. 1184, 1185), is this clear statement: "Where, however, a devisee is expressly directed to pay certain legacies, although not expressly charged by the will, this will, as a general rule, charge the legacies on the land or interest devised, to the relief of the balance of the estate. This rule is particularly applicable * * * where the will further provides that any beneficiary not accepting such condition should forfeit all interest under the will. And even if it is doubtful whether it was the intention of the testator to charge a legacy which the devisee is directed to pay upon the land devised, the construc-

tion should be in favor of charging the land, as it should be presumed that the testator designed that his estate, rather than the personal liability of his devisees, should stand as security for the fulfillment of his bequests."

To hold that the legacy here is not a charge upon the realty devised would not only result in defeating the legacy but it would also defeat the expressed intention of the testator to forfeit the interest of anyone who sought to set aside any portion of the will. The very right and justice of this case demand that the real estate be charged with the legacy.

We are not unmindful of the other rule so well established in Virginia to the effect that personalty is the primary source from which legacies must be paid and that they are not ordinarily charged upon the realty unless they are expressly or impliedly so charged by the testator. Cases such as *Lee* v. *Lee,* 88 Va. 805, 14 S. E. 534; *Todd* v. *McFall,* 96 Va. 754, 32 S. E. 472; and *Smith* v. *Mason's Ex'r,* 89 Va. 713, 715, 17 S. E. 3, 4, support that rule. By the decision of the present case we do not intend to change or modify the principle found in those cases, which are different from the present one. Here the devisee is expressly charged with the payment of a legacy upon the pain of suffering a forfeiture of his devise if he refuses to pay it. Where the portion going to the devisee is composed largely of realty the testator in the absence of expressly charging the land with the payment of the legacy will be presumed to have intended it to be paid from the land.

We have no statute of limitation particularly applying to a charge or lien of this nature. The appellants invoke Code, section 5818, which provides a limitation "of actions not before specified." It is quite clear that this statute has no application here, because in express language it is limited to "Every personal action, for which no limitation is otherwise prescribed * * * ". Here we have no personal action, and no personal liability is sought to be enforced. This is purely an equitable suit for the enforcement of a charge or lien upon land. If the land is not sufficient to

pay the charge the deficiency cannot be converted into a judgment *in personam* against anyone.

There being no applicable statute of limitation that might be invoked, the defense of laches, if made out, would bar the enforcement of the charge. But when we advert to the Virginia law upon this subject it clearly appears that the requisites of laches are not present. As stated in Michie's Digest, Laches, section 7, p. 605: "Generally if the sum sought to be recovered is certain, the transaction has not become obscure, and there has been no such loss of evidence as will be likely to produce injustice, a court of equity will not refuse relief, merely because there has been delay in asserting the claim. *Branner* v. *Branner's Adm'r,* 108 Va. 660, 62 S. E. 952. See *Davis' Adm'r* v. *Davis,* 104 Va. 65, 51 S. E. 216; *Selden's Ex'r* v. *Kennedy,* 104 Va. 826, 52 S. E. 635 [4 L. R. A., N. S., 944, 113 Am. St. Rep. 1076, 7 Ann. Cas. 879]; *Depue* v. *Miller,* 65 W. Va. 120, 64 S. E. 740 [23 L. R. A., N. S., 775]; *Adams* v. *Pugh's Adm'r,* 116 Va. 797, 83 S. E. 370; *Teter* v. *Moore,* 80 W. Va. 443, 93 S. E. 342; *Browning* v. *Browning,* 85 W. Va. 46, 100 S. E. 860; *Tidball* v. *Shenandoah Nat. Bank,* 100 Va. 741, 42 S. E. 867."

And *ibid,* section 11, p. 609: "It is a general rule in equity that mere lapse of time, unaccompanied by circumstances affording evidence of a presumption that the right has been abandoned, is not considered laches." It was held in *Wingfield* v. *McGhee,* 112 Va. 644, 72 S. E. 154, that it satisfactorily appeared that a legacy had never been abandoned or paid, though many years had elapsed since it became due, and that the claim therefor was not barred by laches, because no injury would result to anyone from subjecting the land to its payment.

Mere delay without more will not constitute laches. The other essentials of laches nowhere appear.

The decree is

*Affirmed.*