# Richmond

## W. F. DAVIS v. ROSA DAVIS.

January 16, 1950.

Record No. 3586.

Present, Hudgins, C. J., and Eggleston, Buchanan, Staples and Miller, JJ.

The opinion states the case.

*A. T. Griffith* and *Brantley B. Griffith,* for the appellant.

*J. E. Duff* and *C. S. Wilson,* for the appellee.

STAPLES, J., delivered the opinion of the court.

This is a suit in equity brought by the appellee, Rosa Davis, against her brother, the appellant, W. F. Davis, to enforce certain rights she asserts under the will of their father, C. H. Davis.

By his will C. H. Davis devised to his son, the appellant, a tract of land situated in Russell County, Virginia, containing 210 acres, more or less. This devise is contained in the second clause of the will and refers to the land as "my home tract of land * * * known as the Stuart or Carter land."

By the seventh clause of his will, he provided that "My beloved wife, Mary A. Davis, is to have her home at my

home place which was herein devised to my son W. F. Davis, and she is also to have her support from same place, * * *."

With respect to the appellee, the eighth clause of the will provides: "My daughter Rosa Davis is to have her home and support on my home place, as long as she remains single." She has never married.

At the time of the death of the testator in 1922, appellant, W. F. Davis, took possession of said tract of land and has continued to possess and use it ever since. During the nine years following their father's death the appellee, the appellant, and their mother, Mary A. Davis, lived at the mansion house on said tract of land until the mother's death, which occurred in 1931. The appellant was single at the time of his father's death, but about a year later he married and brought his wife home to live with appellee and her mother. The appellee alleges in her bill of complaint that the treatment accorded to her by appellant's wife was such as to make it intolerable for her to continue to live in the appellant's home after her mother's death, and that a short time thereafter she felt compelled to leave and went to live in the home of her sister, Mrs. Browning; that subsequently she returned on several occasions to make her home with appellant, but the hostile and insulting attitude of his wife toward her continued and she was compelled to leave each time.

The bill further alleges that the appellee, from her early girlhood, had been afflicted with tuberculosis and her condition continued to grow from bad to worse until it became an undue burden upon her sister, Mrs. Browning, and her family, to give her the care and treatment which her bed-ridden condition required. Being without adequate funds to provide for such care, she alleges that she brought this suit for the purpose of establishing as a charge or lien upon the appellant's land her claim against him personally for his failure to provide a home and support in accordance with their father's will.

The answer of the appellant sets up a number of defenses

to the appellee's demands.  To determine the questions thereby raised, the cause was referred to I. M. Quillen, a commissioner in chancery of the Circuit Court.

Appellant contends that the "home place" referred to in the will was intended to include, in addition to the 210 acre tract devised to him, a 170 acre tract devised to O. B. Davis, and a 50 acre tract devised to Homer Creed Davis, and that the burden of supporting appellee should be apportioned between them.

The report of the commissioner, which was confirmed by the court, found, however, that there was no ambiguity on the fact of the will itself, and that it clearly was intended to refer only to the tract devised to the appellant.  The excerpts from the will, which we have quoted above, we think clearly sustain this finding.  In addition, the evidence abundantly shows that, from the time of the testator's death, this was the interpretation which both appellant and appellee placed on the will, and that the claim that the "home place" included the other lands was never suggested until after this suit was brought.

The appellant also contends that at the time the appellee left his home in 1931 she took with her certain articles of household furniture and bedclothing, and that, in consideration of his permitting her to do so, she verbally released all claims against the appellant and his tract of land under the will of their father.  The appellee, however, denies this, and says that all of the property which she removed was hers and that she had purchased it with her own funds.  The appellant also insists that the appellee impliedly agreed to release her rights under the will in consideration of the payment by him of a note of their brother, Jeff Davis, for $400 and interest which she held.  Appellee claims that appellant assumed this note when Jeff Davis conveyed certain lands to him.  She testified that she never agreed to release her rights and there was no testimony that she expressly agreed to do so and no written release was ever executed.

The commissioner's findings, which were confirmed

by the court, sustain the appellee's contentions with respect to both of these alleged releases, and these conclusions are abundantly supported by the evidence. It would serve no useful purpose to review the voluminous testimony in detail, for it is clear that the appellant has failed to carry the burden of proof which rests upon him to establish the alleged release of appellee's rights under the will.

The appellant also asserts that the appellee has been guilty of such gross laches, and other conduct, as would operate as a bar to the prosecution of the suit.

It is true that the appellee delayed many years before she resorted to the court to secure the enforcement of her right of support from the tract of land devised to appellant. In her testimony, however, she gives the following explanation of such delay:

"I didn't bring suit because I didn't want to have trouble with my brother. I would not have done it when I did it, but I couldn't live any longer without it. I had been down sick from May to November, and I had called on him to help me and he wouldn't, and there was nothing else for me to do. I was at the end of the way. I was down helpless, and couldn't do one thing for myself, and no money to pay anyone for waiting on me, then what else could I do. It hurt me to do it, and I was sorry, but I had gone as far as I could go, I couldn't go another step. As long as I could be on my feet and doing for myself I could make out, but when I got past doing anything for myself, then I had to do something."

The report of the commissioner has the following to say on the subject of laches:

"* * * Her explanations for her long delay in taking steps to enforce her rights by legal action are entirely logical and understandable. She was naturally reluctant to bring a suit, and up until the time, shortly prior to the bringing of the suit, that the defendant flatly refused to do anything about her support, she was justified in the assumption that the matter might be adjusted without suit. There is nothing

in the evidence to indicate any abandonment of her right of support, nor has it been shown that the defendant has been in any wise prejudiced by the delay. The evidence, it might properly be said, shows that Rosa Davis has been upon the charity of her sister and her sister's family since 1940. Doubtless both she and the Brownings feel that this is a situation which should not continue indefinitely. Attempts had been made to adjust the matter by Mr. Browning, the husband of May Browning, which resulted in heated words between Mr. Browning and W. F. Davis."

The above expressed views of the commissioner were confirmed by the decree of the circuit court, and we think the evidence amply sustains the correctness of the conclusion reached that the appellee's rights under the will were not barred by laches or acquiescence on her part. See *Gilley* v. *Nidermaier*, 176 Va. 32, 43, 10 S. E. (2d) 484, and cases therein cited.

The appellant insists that there is no personal liability on his part to the appellee. But the provision of the will that the appellee "is to have her home and support on my home place as long as she remains single" carries with it the necessary implication that when appellant accepted the devise of this farm and entered into possession of it, and exercised the exclusive right to cultivate and manage it, he thereby obligated himself, in addition to providing a home for appellee in the mansion house, also to furnish her with reasonable support from the income derived, or which should be derived, from the farm. It was shown that the rental value of the farm was more than enough to provide for this. This obligation rests upon the appellant because the effect of the provisions of the will is that the appellee's right to a home and support is impressed as the first charge upon the real estate in question. *Gilley* v. *Nidermaier, supra* (176 Va. at pp. 39 to 42), and the authorities cited and discussed in the opinion of Mr. Justice Gregory. The appellant cannot, in equity and good conscience, appropriate to himself those benefits from the land which the will gave to his sister,

the appellee, without being accountable to her therefor. The appellant asserts that it was error for the court to enter a personal judgment against him because the bill does not pray for this specific relief. The bill seeks to impress as a charge against the real estate the amount which she was entitled to receive from appellant as support. It also contains a prayer for general relief. The personal judgment fails within this prayer.

While the appellant argues that the appellee was not compelled to leave the home place but did so of her own choice, it is not seriously disputed that his wife's treatment of her and attitude towards her were decidedly hostile.

The appellee testified that she was regarded by appellant's wife as an interloper in the home, and her conduct was frequently such as to be insulting and humiliating. This testimony of appellee must be accepted as true because she stated that the objectionable conduct on the part of the wife nearly always occurred at times when the appellant was not present and there was no denial of this conduct on the part of the wife as she was not called as a witness, although the evidence indicates that she was available if the appellant had desired to call her. His failure to do so raises a legal presumption that her testimony would not have been favorable to him. *Bland* v. *Richmond*, 190 Va. 42, 46, 55 S. E. (2d) 289. The commissioner found "that the treatment accorded to Rosa Davis in the home of W. F. Davis and Nellie Mays Davis was such that she was justified in the action that she took and could not be expected to continue living under such conditions in her state of health." This finding was confirmed by the chancellor, and, in our opinion, it is in accord with the great weight of the testimony. The appellant cannot escape responsibility for the conduct of his wife whom he introduced into the household. When complaint of it was made, he said there was nothing he could do about it.

In his answer, the appellant sets up the defense of the statute of limitation with respect to the enforcement of

appellee's right to subject the real estate to her claim. He relies upon the provisions of section 5827a as enacted by Chapter 401 of the Acts of 1942, which is set out in the margin.[1] It is the position of appellant that the provision in the eighth clause of the will in favor of the appellee is a legacy within the meaning of this Code section. While the right which is vested in the appellee by the will is not uniformly regarded as a legacy in the strict sense of that word, it seems clear that it was the legislative intent to make the period of limitation thereby provided applicable to such a provision for support as that here involved. A provision in a will charging lands devised with the support of a third person is generally considered to be, in effect, a legacy, the amount of which is rendered certain by future events, conditions and circumstances. 57 Am. Jur., Wills, section 1492; *Richards* v. *Merrill*, 13 Pick. (Mass.) 405; Annotation L. R. A. 1917A, at p. 618.

The appellant argues that, since the appellee's bill alleges that she is entitled to recover certain expenses incurred by her during the time that she lived on the appellant's farm, such as the cost of her clothes, laundry, hospital and medical bills, and medicine, the cause of action arose immediately following the death of the testator in 1922. It is true that this claim is made by the appellee, but the circuit court held that her right of recovery was limited to the time which elapsed after she felt compelled to leave the farm in 1931.

---

[1] Section 5827a. Limitation on enforcement of bequests and legacies.— Wherever by any will, the testator devises any real estate to some person and requires such person to pay some other person a specified sum of money, or provides a legacy for some person, which constitutes a charge against the real estate of the testator, or any part thereof, no suit or action shall be brought to subject such real estate to the payment of such specified sum of money or such legacy, as the case may be, after twenty years from the time when the same shall have been payable, and if the will specifies no time for the payment thereof, it shall be deemed to have been payable immediately upon the death of the testator, provided that any such suit or action may be brought at any time within one year from the effective date of this act, but not thereafter, when the cause of action first accrued as long as or longer than nineteen years prior to such effective date.

According to the decree appealed from, therefore, her cause of action did not arise until 1931.

Furthermore, there is no evidence that the appellee ever made any demand upon the appellant for the above mentioned items of personal expense while she was living there. She must be held, therefore, to have acquiesced in the support which was accorded her during that time. Her cause of action against the appellant must be considered to have accrued, not at the time she complains in her bill that the appellant failed to perform his contract satisfactorily, but from that fixed in the decree of the court as the time when the breach of the appellant's duty first occurred. It follows, therefore, that, since no part of the money embraced in the court's decree was payable prior to 1931, and since the appellee does not question here by assignment of cross-error the correctness of the decree appealed from in this respect, we must conclude that the limitation period of twenty years provided for in section 5827a of the Code had not expired at the time the appellant's suit was instituted on December 1, 1947.

Appellant in his answer specifically pleads the statute of limitations "to the claim and each and every part thereof asserted by the complainant in her bill of complaint."

We think this plea must be sustained as to all sums which the appellee was permitted by the decree complained of to recover personally against the appellant, except such sums as accrued within three years prior to the institution of this suit on December 1, 1947. Code of Virginia (Michie's 1942), section 5810. It is clear that appellant's personal liability arises by virtue of an implied or quasi contract, and that the statutory period applicable to an oral agreement must be held to apply and to bar the entry of a personal judgment against him as to the sum which accrued before December 1, 1944, to wit $2,400. 57 Am. Jur., Wills, section 1494; *Trickle* v. *Snyder*, 217 Wis. 447, 259 N. W. 264, 97 A. L. R. 989; *Stringer* v. *Stephens' Estate*, 146 Mich. 181, 109 N. W. 269. Said sum of $2,400 and interest found due

the appellee which accrued prior to December 1, 1944, however, must be held to be a lien or charge upon the home tract of land which was devised to the appellant.

The decree appealed from will therefore be amended so as to reduce the amount of the personal judgment in accordance with the foregoing. There will also be added to the decree a provision that the entire sum found by the decree to be due, and to become due, to the appellee constitutes a lien or charge upon the land in question. The decree leaves open for future change as circumstances may require the monthly payments fixed for the present at $75.

A number of other points are raised by the appellant but we find no merit in them, and it is not necessary to consider them in detail.

The appellee assigns as cross-error the failure of the court to fix the amount to which she was entitled prior to the institution of this suit at $240 per year, as found by the commissioner. The decree appealed from sustained the appellant's exception to the amount fixed by the commissioner and allowed only $200 per annum.

We have carefully considered the evidence bearing upon this question and are unable to conclude that, under all the circumstances, the amount of $200 per annum fixed by the chancellor is erroneous.

The decree appealed from is amended in the particulars above indicated, and, as so amended, is affirmed.

*Decree amended and affirmed.*