# Richmond

CHARLES EVANT HUNTER, IN HIS OWN RIGHT, ETC., ET AL. v. THE
FIRST NATIONAL EXCHANGE BANK OF ROANOKE, EXECUTOR, ETC.,
ET AL.

January 21, 1957.

Record No. 4597.

Present, Hudgins, C. J., and Eggleston, Spratley, Buchanan, Miller and Whittle, JJ.

The opinion states the case.

*Leonard G. Muse* (*Charles D. Fox, Jr., Evans B. Jesse, T. L. Plunkett, Jr.; Woods, Rogers, Muse & Walker* and *Strickler, Plunkett & Strickler*, on brief), for the appellants.

*Joseph Wysor Smith* and *A. Linwood Holton, Jr.*, for the appellees.

BUCHANAN, J., delivered the opinion of the court.

[■] This suit involves the construction of the will of Dr. Herman E. Jones, particularly paragraph 3 thereof. It was brought by The First National Exchange Bank of Roanoke, as executor of the will of Eva Y. Jones, who was the wife of Dr. Jones, and the principal issue was the amount due the estate of Mrs. Jones under paragraph 3, which is as follows:

"(3) I give, devise and bequeath unto my beloved wife, Eva Jones, for and during her natural life, the residue of my estate, of whatever consisting and wherever located, all rents and profits derived therefrom to be hers absolutely; and in the event the said rents and profits shall, during any calendar year, fail to provide an income of at least Six Thousand ($6,000.00) Dollars, then and in that event the principal of my estate may be encroached upon at the end of said calendar year for the purpose of paying to my said wife the difference between the income for said year and the sum of Six Thousand ($6,000.00) Dollars."

Dr. Jones, who resided in Roanoke and had practiced medicine there for many years, died on August 7, 1933, at the age of 73. His wife died February 22, 1954, at the age of 88.

Dr. Jones' will was dated November 3, 1931. The first two paragraphs directed payment of burial expenses and debts. Following paragraph 3 it provided that after the death of his wife, or at his death if she died first, eight money legacies totaling $8,750 were to be paid to named legatees, after which the income from his entire estate should go to his two sisters for their lives and after their deaths the corpus to his three named nephews and a niece. Mrs. Jones was appointed executrix and trustee of the will, and Charles Evant Hunter, a nephew and one of the appellants, was appointed in her place at her death. For the purpose of the will the estate was left in trust to the trustee with full power to sell and convey, but only with the consent of the wife.

The will of Mrs. Jones was dated August 1, 1952. After making certain bequests it gave the residue of her estate to Second Presbyterian Church of Roanoke. Her estate, consisting of tangible and intangible personal property, was appraised at $83,816.07 exclusive of "the interest, if any, of Eva Yates Jones in the estate of her husband, H. E. Jones, deceased."

The estate of Dr. Jones was appraised at $53,913.52, consisting of tangible personal property at $815, of which $400 was for household and kitchen furniture; money in bank, $443.52; accounts receivable, $1,750; bonds, $7,000; his residence property at $13,500; an office building in Roanoke at $30,000; and five lots at $405.

Mrs. Jones qualified as executrix of her husband's will on September 11, 1933. She filed with the Commissioner of Accounts her first settlement as executrix on January 15, 1935, showing receipts and disbursements to that date and a cash balance on hand of $205.36. Total receipts for the period were $4,210.72, including $1,884 rent on the office building. The disbursements were for liabilities of the estate and $600 to herself on the bequest to her in paragraph 3 of the will. Her next settlement was made September 11, 1935. The receipts for that period were $1,667.01, which included $619.30 advanced by her to the estate and all of which was disbursed for upkeep and taxes on the real estate. At the bottom of that settlement was this:

## "MEMO.

| | | |
|---|---:|---:|
| "Amount due from Estate for Year 1933-1934 to Eva Jones, per Will | $6,000.00 | |
| Less Amount Drawn | 600.00 | $5,400.00 |
| Amount due from Estate for Year 1934-1935 to Eva Jones, per Will | 6,000.00 | |
| Plus Amount Advanced | 619.30 | 6,619.30 |
| Total Amount Due Eva Jones | | $12,019.30 |
| Amounts withdrawn, Bonds appraised value | 7,000.00 | 7,000.00 |
| | | $ 5,019.30" |

From September 11, 1935, through September 11, 1953, which was a few months before she died, Mrs. Jones filed before the Commissioner of Accounts each year a statement and settlement of her

accounts as executrix, all of which were duly approved and recorded. In each annual settlement she set forth the source and amount of receipts and the amount and object of the disbursements. At the end of each was a memorandum like that above quoted in which she charged the estate with $6,000 as due her under the will and with the total due her at the end of each accounting period. She also showed for each year the excess of receipts over disbursements and accumulated that excess at the end of the accounting period. She showed as receipts the money in bank, proceeds from the sale of all tangible personal property, from accounts receivable and the bonds. She failed to include the sale of the five lots in 1946 for which she was charged $700 in the final decree.

Her final settlement made September 11, 1953, showed the amount due her under the will for the 20-year period from 1933 to 1953 to be $113,022.20, and the excess of receipts over disbursements for that period to be $16,934.68. The disbursements included only $600 as paid her under the provision of the will in 1935.

A hearing in the suit was had at which some evidence was presented to the court *ore tenus* and afterwards the decree appealed from was entered finding to be due the estate of Eva Y. Jones from the estate of Herman E. Jones the sum of $95,387.52, ascertained by deducting from the amount due her under paragraph 3 of the will as shown by her settlements the amount of the excess of receipts over disbursements, plus the proceeds from the sale of the five lots. The decree held that a lien existed on the assets of the Herman E. Jones estate for the amount due and gave directions as to its collection.

The court was of opinion and so found in its decree that the intent of the testator seemed quite clear, "that he desired his entire estate, income first, if it should be sufficient, and principal, if necessary, to be used to provide an income of $6,000.00 annually for his wife, Eva Y. Jones, regardless of her needs. This right being given, the only requirement necessary to effectuate it was that it be exercised by his wife;" further, that she accepted the benefits provided for her in the will and the amount due her was a charge against the assets of her husband's estate and was not barred by the statute of limitations.

The appellants assigned error to this construction of the will. Their contention is thus expressed in their brief:

"It is clear that Dr. Jones meant for his wife to have an annual income from his estate of at least $6,000.00 if she saw fit to exercise the privilege of invasion, but if she did not so elect and take, when it was

her privilege to do so, so much as was left in the corpus at the end of each calendar year would continue to be his estate, and when she died all that remained in the corpus would go to the remaindermen under his will."

The object in construing a will, as has often been said, is to ascertain the intent of the testator as expressed in the words of the will as used by him; *i.e.*, what he meant by what he wrote, aided, if needed, by the facts and circumstances existing when the will was written. 20 Mich. Jur., Wills, § 77, p. 243; *Pitman, et al.* v. *Rutledge, et al.*, 198 Va. 567, 95 S. E. 2d 153.

The testator and his wife had no children and it is conceded that she was the first object of his bounty. They lived together in the home which was part of his estate. The first two paragraphs of his will, as stated, directed payment of his debts and burial expenses. The third paragraph gave to his wife the residue of his estate, "of whatever consisting and wherever located," all rents and profits therefrom to be hers "absolutely"; and if said rents and profits "during any calendar year, fail to provide an income of at least Six Thousand ($6,000.00) Dollars," then and in that event the corpus of the estate "may be encroached upon at the end of said calendar year" *for the purpose of paying her* the difference between the income for said year and the sum of $6,000.

The language used seems to emphasize these points: (1) Everything left after payment of debts and burial expenses was given his wife for life; (2) all rents and profits were to be hers absolutely; if that was not sufficient during any calendar year to give her (3) an income of at least $6,000 a year, the principal might be encroached upon at the end of said calendar year (4) for the purpose of paying her the difference.

It was not made a condition of this encroachment that his wife need that additional money for her support and maintenance, or for any other purpose. There was no condition attached to her right of enjoyment. It is clear, as conceded by the appellants, that Dr. Jones meant for his wife to have an annual income *from his estate* of at least $6,000. He stated that to be the purpose of the provision. There can be no doubt that she had an absolute right to take from his estate at the end of each calendar year a sum equal to the difference between the income for that year and $6,000. Nor is it open to question that she could sell any of the corpus of the estate at the end of any calendar year and apply the proceeds to the existing

deficit. Her right and title to the $6,000 a year from the income or corpus, or both, is clear. Having that right and title, did she lose it because she did not convert the real estate into cash and put the money in bank or use it to buy stocks or bonds or even other real property for herself?

She did exercise her right with respect to all the property of the estate except the home and its furnishings and the office building. She sold all the other tangible personal property, the bonds, the five lots, collected what she could of the accounts receivable and used the proceeds and money in bank under the authority of paragraph 3. Her reasons for holding on to the home and the office building were understandable and even praiseworthy. The office building, after the bonds were sold, was the only income-producing property she received. There was evidence that she considered selling it but decided to hold it so she would have a sure income from it each year. She wanted to keep the real estate in good repair, she said, because it was to go to Dr. Jones' people and she wanted them to have it. She told one of the appellants that she did not want to sell these properties for two reasons, one that she might invest the money and lose it, and the other that she did not look upon these properties as hers but as support for Dr. Jones' sisters and his nephews and niece.

But to show that she did not thereby intend to waive her right to have $6,000 a year from her husband's estate, as he had provided by his will, she set up in her annual settlements the amount that was due her at the end of each year of the account, specifically making claim to the sum so given to her and asserting clearly her right to have it paid. These settlements were all approved by the Commissioner of Accounts and duly recorded in the clerk's office.

Having been given the unconditional right to take at least $6,000 a year out of the estate, Mrs. Jones did not, we think, lose that right by failing to collect it each year as it was due. She could doubtless have renounced her right or declined to accept the bequest, 57 Am. Jur., Wills, § 1566, p. 1070, but she did neither. On the contrary, she asserted each year her right to the bequest in such way as to make her claim a matter of public record, which was never disputed or denied by anybody over the long period of years until this suit was instituted. Had she exercised her right each year, her husband's estate would have been exhausted long before she died. Her effort to preserve the estate for the residuary legatees would have been successful in some degree had her death occurred earlier. The failure

of the effort leaves the residuary legatees no worse off than they would have been if she had taken each year the sum given to her and thus used up the corpus of the estate years ago. Her course of action did not create an estoppel.

We think it unnecessary to discuss the cases mainly relied on by the appellants.[1] They represent conclusions as to the intention of other testators differently expressed in different wills. In the *Doerfler* case, for example, the court had previously construed the will to mean that the widow was entitled to the income from the estate and enough of the principal to maintain herself according to her usual custom of living. It was held that a later discovered codicil did not change the will except to limit the amount of the principal the widow could use for the same purposes. This statement in the opinion clearly distinguishes that case from this: "Certainly it cannot be reasonably claimed that she [the widow] had any authority to convert any part or all of the principal of this trust estate to her separate estate during her lifetime." It is conceded here that Mrs. Jones could have done that very thing under Dr. Jones' will.

Likewise the cases relied on by the appellees[2] do not settle the question here, although the *Moyer* and *Ellertson* cases are persuasive. The wording of the clauses of the will being construed in all of them, however, differs in some degree from paragraph 3 of the Jones will. Usually each will presents its own problem. As said by Judge Burks in *Conrad* v. *Conrad's Ex'or*, 123 Va. 711, 715-6, 97 S. E. 336, 338, little aid comes from other cases construing other wills. " 'It often happens that the same identical words require different constructions, according to the context and the peculiar circumstances of each case.' " See also *Crisman* v. *Swanson*, 193 Va. 247, 250, 68 S. E. 2d 502, 505.

Appellants would distinguish these cases on the ground that they involved annuities, and they conceded in argument that if paragraph 3 of the Jones will created an annuity, the decree of the lower court was correct. The bequest to Mrs. Jones was perhaps not an annuity in a technical sense. An annuity is defined as a fixed amount directed to be paid periodically without contingency. 3 C. J. S.,

---

[1] *In Re Doerfler's Will*, 247 Wis. 629, 20 N. W. 2d 549; *In Re Booth's Will*, 105 N. Y. S. 2d 73; *Leonard* v. *Leonard's Ex'or*, 78 Va. 248; *Brown* v. *Cresap*, 61 W. Va. 315, 56 S. E. 603.

[2] *In Re Moyer's Estate*, 361 Pa. 18, 62 A. 2d 919; *In Re Ellertson's Estate*, 157 Kan. 492, 142 P. 2d 724; *Johnson* v. *McClure*, 5 Wash. 2d 123, 104 P. 2d 962.

Annuities, § 1, pp. 1373-4; *Parsons* v. *Parsons,* 167 Va. 374, 379, 189 S. E. 448, 450.

Theoretically the bequests to Mrs. Jones would have been more than $6,000 had the rents and profits exceeded that amount. Practically it was a definite amount, fixed at $6,000 by the fact that the estate did not and could not be expected to yield that amount of income. Net receipts for the first sixteen months, including the money in bank, were approximately eight hundred dollars; for the next two years expenses exceeded receipts, and thereafter the net annual income was usually less than one thousand dollars.

The bequest was intended as an annuity and whether it was one technically is not controlling. We agree with the conclusion of the trial court that Dr. Jones by his will gave his wife $6,000 a year out of his estate, either from income or corpus, or both, without any contingency or condition. She did not lose this right by not taking it out of the corpus each year. She claimed it each year and made it abundantly clear that she was not rejecting it nor relinquishing her right to have it.

Appellants' plea of the statute of limitations was not pressed in argument. In any event it was ineffective in view of § 8-21 of the Code and our holding in *Davis* v. *Davis,* 190 Va. 468, 57 S. E. 2d 137.

The cause was correctly decided and the decree appealed from is accordingly

*Affirmed.*