# Richmond

## ADAMS v. PUGH'S ADMINISTRATOR.

### November 12, 1914.

1. DISMISSAL WITHOUT PREJUDICE—*Effect*.—The dismissal of a petition filed in chancery for the recovery of a debt, without prejudice to the petitioner to institute such action as he might be advised to bring for the maintenance of his rights, is not a final adjudication of the matter in controversy.

2. DISMISSAL—*Effect*—*Fraud*.—The dismissal of a suit brought to recover a balance alleged to be due on a contract for the purchase of machinery is not an adjudication that the defendants were never bound for such purchase money by reason of fraud in the transaction.

3. SUBROGATION—*Joint Debt—Lien—Overpayment by One—Limitation of Actions*.—Where one of several joint obligors in a debt secured by a lien pays more than his share of the joint debt, he is, as against his co-debtor, entitled to subrogation to the rights of the creditor in such lien for the repayment of the excess. Though an action at law to secure personal liability be barred by limitation, the right of subrogation to the lien of the creditor still exists.

4. EQUITY—*Laches—What Constitutes*.—Length of time alone is not a test of staleness of a demand, and mere lapse of time, unaccompanied by some circumstances affording evidence of a presumption that the right has been abandoned is not laches. Generally, if the sum sought to be recovered is certain, the transaction has not become obscure, and there has been no such loss of evidence as will be likely to produce injustice, a court of equity will not refuse relief merely because there has been delay in asserting the claim.

Appeal from a decree of the Circuit Court of Rockingham county. Decree for complainant. Defendant appeals.

*Affirmed.*

The opinion states the case.

*Sipe & Harris,* for the appellant.

*D. O. Dechert* and *James B. Stephenson,* for the appellee.

Keith, P., delivered the opinion of the court.

Adams, the appellant, and Pugh, the appellee's intestate, gave their joint notes for the purchase of certain machinery from Cooper & Co., the last note maturing January 1, 1885, securing them by deed of trust on the machinery purchased, and a tract of land owned by Adams, and another owned by Pugh. On February 21, 1883, and April 21, 1883, Adams paid to the creditor on account of the debt certain sums, aggregating $213. On April 27, 1883, May 27, 1883, June 18, 1883, and June 26, 1883, Pugh made certain payments, aggregating $188.40. On May 18, 1885, Pugh's land was sold under the deed of trust for $844.05, and its proceeds applied to the joint debt. On the 11th of February, 1886, Pugh filed his petition in the chancery suit of *Rohr Brothers* v. *Adams,* the purpose of which was to subject an equitable separate estate of Adams' wife to the satisfaction of the bond due to Rohr Brothers. By this petition Pugh sought, not the enforcement of his right of subrogation against Adams for the overpayment made by him on the debt to Cooper & Co., but a personal recovery against Adams of his excess payment. This petition was dismissed, but without prejudice to Pugh's right to proceed as he might be advised in the protection of his interests. In February, 1887, Cooper & Co. instituted an action at law against Adams and Pugh for the recovery of the balance due on the debt for which they were jointly

bound, and this action, after demurrer and pleas had been filed, was at the April term, 1888, dismissed agreed.

To April rules, 1893, Pugh being then dead, Cooper & Co. filed their bill against Adams, in which repudiating the authority of the attorney who had acted for them in the action at law to agree to its dismissal, they sought to have the dismissal set aside and an enforcement of the deed of trust against the land of Adams for the satisfaction of the unpaid balance amounting to something over $300. To this cause Adams filed his answer in which he maintained, first, that the matter in controversy, by virtue of the order dismissing the law action agreed, was *res adjudicata;* second, that by reason of a breach of warranty of the machinery Pugh and Adams had sustained damages to the amount of $1200, which he offered to set off against the complainants' demand; and, third, that the action was barred by the statute of limitations. On the 29th day of October, 1897, a decree was entered in the cause of *Cooper & Co.* v. *Adams,* in which it was held, that "the court being of opinion that the complainants have no right to maintain this suit, it is, therefore, adjudged, ordered and decreed that the bill be dismissed," without disclosing upon which of the three grounds of defense the decree of the court was predicated.

In August, 1902, Pugh's administrator filed a bill, in which are set out the facts above recited with respect to the purchase of the machinery, the payments made upon the purchase price by Pugh in his lifetime and by Adams, the sale of Pugh's land under the deed of trust, and claiming, as Pugh's administrator, that he was entitled to contribution from Adams sufficient to equalize their payments on account of their debt, and to subrogation to all the rights under the deed of trust to secure the purchase money against the tract therein conveyed belong-

ing to Adams which were originally held by the beneficiary in the deed of trust.

Adams answered this bill, in which he says that the machinery purchased was utterly worthless, was finally abandoned by them, and that its worthless character was demonstrated by the fact that the property which was purchased but a short time before at $1,569 was sold at the public sale for a little over $300. The answer relies upon the fact that Cooper & Co. undertook to enforce payment of the unpaid balance by action at law and by suit in equity, as hereinbefore stated, in which they were defeated. The respondent then charges that Pugh in his lifetime did permit the sale of his land under the deed of trust, to the great surprise of respondent, who stood upon his rights and refused to allow the land to be sold to satisfy an unjust and unreasonable demand; that the loss Pugh had suffered was by reason of his own election and default; and that neither he in his lifetime nor his personal representative since his death have ever had the slightest ground of complaint of respondent, or to recoup from the latter any loss to which the former chose to submit as aforesaid. The answer claims further, that the allegations of the bill with respect to payments made on the purchase price of the machine are untrue in so far as the same give credit to sundry payments made by Pugh, which were in fact made by respondent. The answer further maintains that the whole subject has been adjudicated in the several suits to which reference has been made, denies that there was any right of subrogation or contribution arising against him in favor of Pugh out of the transaction, and in addition pleads the statute of limitations and laches on the part of the plaintiff as a bar to any recovery.

The cause was heard upon the bill and answer, exhibits and demurrers, and the court held that upon the

statute of limitations there could be no personal recovery against Adams, but granted so much of the prayer of the bill as asked that he be subrogated to the lien of the deed of trust upon the thirty acre tract of land conveyed by Adams to secure Cooper & Co., the original creditors, and held the amount due from Adams to the administrator of Pugh to be the sum of $408.50, with interest from the 18th day of May, 1885; and from that decree this appeal was allowed.

The dismissal of the petition filed by Pugh in the case of *Rohr Brothers* v. *Adams,* being without prejudice to his right to institute such action as he might be advised to bring for the maintenance of his rights, cannot be relied upon as a final adjudication of the matter in controversy. The chancery suit of *Cooper & Co.* v. *Adams,* which was brought to recover a balance due upon the original debt is not an adjudication upon the merits of the original transaction between Cooper & Co., on the one part, and Pugh and Adams upon the other, and does not establish the proposition for which Adams now contends—that he was never bound in law for the purchase money to Cooper & Co. by reason of the fraud in the transaction—but merely holds that the balance claimed by Cooper & Co. as being still due could not be recovered.

We are unable to discover in the record any evidence of bad faith on the part of Pugh or of his administrator. We see nothing in the record which tends to show that Pugh or his administrator corruptly waived any defense which they might lawfully have made. The record shows, indeed, that Adams made considerable payments upon the purchase money; that he used the machine for a considerable period, and appropriated to his own use the profits accruing from its operation; and, further, that he makes the claim that he should be credited by some

51

of the items of payment which the bill alleges were made by Pugh in his lifetime. We have considered the record carefully, and it seems to us clear that there is no merit in any of the defenses attempted on behalf of appellant. One of his contentions, however, presents an interesting question of equity practice, which we think has been established by numerous decisions which have been followed in the decree before us.

Appellant contends that when a joint obligor or surety makes a payment in excess of his just proportion of what is due to the creditor, his claim against his co-obligor rests upon the implied promise growing out of the equitable relations which the parties bear to each other, and not upon the written contract by which they become security, and that as a consequence the statute of limitations of three years constitutes an absolute bar—relying upon *Tate* v. *Winfree,* 99 Va. 255, 37 S. E. 956.

In that case there was no lien, and the proposition for which appellant contends was properly applied.

In *Wheatley* v. *Calhoun,* 12 Leigh (39 Va.) 264, 37 Am. Dec. 654 the original debt was a joint obligation, but not a partnership debt. Subsequently the firm made its notes therefor and secured them by a lien on the property for which the debt was created. Afterwards one of the partners paid the entire debt, and he was subrogated to the lien of the creditor whose debt he had satisfied.

In *Dobyns* v. *Rawley,* 76 Va. 537, the consideration of real estate sold and conveyed by Fulton to Rawley and Davis jointly was $5,000, for the payment of which they executed their joint bonds. In a subsequent division of the land between the purchasers, Rawley's parcel was rated at $3,000 and Davis' at $2,400, and in this proportion they were to discharge their joint indebtedness to Fulton. It was held that the legal effect of the arrangement was that, as between the two purchasers and in

relation to each other, they were principal debtors for their respective portions of the purchase money, and each was surety for the other's portion; and that if either paid more than his agreed share, he became entitled to all the rights and remedies of a surety—to subrogation among the rest—against the other for repayment of such excess.

In *Sands* v. *Durham,* 99 Va. 263, 38 S. E. 145, 54 L. R. A. 614, 86 Am. St. Rep. 884, the subject is fully considered. Upon the facts of that case, it seems that "the partnership had been dissolved, the social assets had been exhausted in the payment of partnership debts, and a settlement of the partnership accounts had been made, from which it appeared that the appellee, J. H. Durham, was in advance to the firm, and, with his individual means had paid the judgments against it. Under these circumstances the circuit court was of opinion and decreed that appellee was entitled to be subrogated to the rights of the judgment creditors, whose liens he had discharged; and to subject the real estate owned by his co-partner, D. A. Early, at the date of the recovery and docketing of said judgments, to their satisfaction." And this decree was affirmed by this court.

To the same effect are the decisions of the Supreme Court of West Virginia, which, for reasons which have been often adverted to, are entitled to great weight.

In *Gooch* v. *Allen,* 70 W. Va. 38, 73 S. E. 56, 37 L. R. A. (N. S.) 930, dealing with the identical question before us, it was claimed that "though there was once a right to subrogation, it is lost by the statute of limitations of five years, the period applicable to the case of a surety demanding payment or contribution of his principal or co-surety. True, action at law would be barred, but this case is governed by the principle of subrogation. The party claims the right in equity under a deed of trust.

A deed of trust has no limitation by statute. It is only subject to laches. Presumption of payment in twenty years bars it, unless repelled by evidence. The creditor has that limitation. He is not sooner barred. The surety takes the creditor's shoes, and can avail himself of the creditor's rights. So can the co-debtor. The statute of five years does not apply."

And in *Smith* v. *Davis,* 71 W. Va. 316, 76 S. E. 670, 43 L. R. A. (N. S.) 614, the same result was reached. See also, *Hughes* v. *Thomas,* 131 Wis. 315, 111 N. W. 474, 11 L. R. A. (N. S.) 744, 11 Am. Cas. 673.

There is no merit in the defense of laches.

In *Tidball* v. *Bank,* 100 Va. 741, 42 S. E. 867, this court said: "Delay alone in the prosecution of a suit does not prevent a party from recovering. Length of time alone is not a test of staleness of a demand, and mere lapse of time, unaccompanied by some circumstances affording evidence of a presumption that the right has been abandoned, is not laches. Generally, if the sum sought to be recovered is certain, the transaction has not become obscure, and there has been no such loss of evidence as will be likely to produce injustice, a court of equity will not refuse relief merely because there has been delay in asserting the claim."

It is true that one of the original parties is dead, but there is no such obscurity in the transaction and no such loss of evidence as will be likely to produce injustice.

Upon the whole case we are of opinion that the decree of the circuit court should be affirmed.

*Affirmed.*