P. R. Cost *v.* K. C. MacGregor *et al.*

(No. 9263)

Submitted January 20, 1942.. Decided March 24, 1942.

*Columbus Wetzel,* for appellant.
*Kay, Casto & Amos,* for appellee.

RILEY, JUDGE:

Plaintiff, P. R. Cost, instituted this chancery cause in the Circuit Court of Kanawha County to obtain against K. C. MacGregor and Maybelle MacGregor a money decree and to enforce such decree by process of attachment against their real estate. Defendants filed a joint plea of

the statute of limitations, to which plaintiff interposed a demurrer. The circuit court having sustained the plea, this Court granted an appeal which, upon hearing, was dismissed as improvidently awarded because the order from which the appeal was taken was not a final or appealable order. *Cost* v. *MacGregor*, 123 W. Va. 316, 14 S. E. (2d) 909. Thereafter, the circuit court by an order entered on July 16, 1941, again sustained the plea of the statute of limitations and dismissed the bill of complaint, after an expression by counsel for plaintiff that he did not desire to file an amended bill. From this decree plaintiff appeals.

The facts of this cause appear in the opinion prepared by Judge Fox upon the former appeal, and for convenience we repeat them as therein stated:

"On February 1, 1929, Cost-MacGregor Co., Inc., executed its negotiable promissory note for $5,000, payable to P. R. Cost, K. C. MacGregor and Maybelle B. MacGregor in one hundred twenty days. This note was endorsed by the payees and discounted at the Union National Bank at Clarksburg. The obligation of the indorsers was equal, the indorsement being joint. The note was not paid by the maker, was duly protested for non-payment, and paid by P. R. Cost on October 31, 1929, the amount paid, including interest, being $5,122.40. At the time of this payment, the bank made the following indorsement on the back of the note: 'This note paid and assigned to P. R. Cost without recourse.' On May 26, 1939, P. R. Cost instituted this suit in the Circuit Court of Kanawha County, and service of process was obtained on the MacGregors in that county. In the bill the facts above noted are set up, and a claim made by Cost against the MacGregors for two-thirds of the amount paid to the bank, on the theory that the Mac-Gregors were liable for and should be required to contribute their share of the amount so paid on account of said note. The prayer of the bill is 'that defendants * * * may be required to contribute to the payment of their proper part of the note and interest herein described * * *' and '* * * further and general relief as to equity may seem meet * * *.' It should be noted that a writ of attachment was sued out and levied on a tract of land

situated in Tyler County, West Virginia, and its sale sought under the lien created thereby."

Was the trial chancellor in error in concluding that this proceeding was "governed by the five years statute of limitations"? Code, 1931, 55-2-6, which designates the periods in which the variant kinds of actions may be instituted in this jurisdiction, reads, in part, as follows:

> "Every action to recover money, which is founded * * * on any contract * * * shall be brought within the following number of years next after the right to bring the same shall have accrued, that is to say: * * * if it be upon any other contract in writing under seal, within ten years; if it be upon * * * a contract in writing, signed by the party to be charged thereby, * * * but not under seal, within ten years; and if it be upon any other contract, express or implied, within five years, * * *."

Initially, it is to be noted that plaintiff seeks to require defendants "to contribute to the payment of their proper part of the note and interest" and the trial court apparently applied the rule that since contribution is grounded in the theory of an implied promise, the limitation of five years under our statute was applicable. There is ample judicial authority to sustain such a conclusion when the principle of contribution is controlling, whether the proceeding be one in equity or at law. *Bartlett* v. *Armstrong*, 56 W. Va. 293, 49 S. E. 140; *Adams* v. *Pugh's Adm'r.*, 116 Va. 797, 802, 83 S. E. 370; 18 C. J. S. §13, Subject, Contribution; *Tate* v. *Winfree*, 99 Va. 255, 37 S. E. 956; *Gregg* v. *Carroll*, 201 Mo. App. 473, 211 S. W. 914. But, is the instant case one for the application of that doctrine?

The bill of complaint alleges the bank "assigned and endorsed" the note to plaintiff Cost, and the note itself shows that "This note paid by and assigned to P. R. Cost." The position of defendants, denied by plaintiff, is that payment by Cost extinguished the debt. Were this an instance where a party primarily liable for the payment of an obligation had discharged it, the recent case of *Perkins* v. *Hall*, 123 W. Va. 707, 17 S. E. (2d) 795, would sustain de-

fendants' contention; but the opinion therein correctly stated that "unquestionably indorsers are secondarily liable." *Ohio Valley Builders' Supply Co.* v. *Bank,* 110 W. Va. 320, 158 S. E. 181; *Arnold* v. *Improvement Co.,* 118 W. Va. 425, 428, 190 S. E. 685. Under Ch. 98A, Section 120, Barnes' Code, 1923, effective at the time that Cost made payment to the bank, it was provided that "a person secondarily liable on the instrument is discharged (1) by any act which discharges the instrument * * *," while Section 121 read that "when the instrument is paid by a party secondarily liable thereon, it is not discharged * * *." Likewise, Section 119 enumerates the instances in which a note is discharged as follows:

"A negotiable instrument is discharged (1) by payment in due course by or on behalf of the principal debtor; (2) by payment in due course by the party accommodated, where the instrument is made or accepted for accommodation; (3) by the intentional cancellation thereof by the holder; (4) by any other act which will discharge a simple contract for the payment of money; (5) when the principal debtor becomes the holder of the instrument at or after maturity in his own right."

The sections read in *pari materia* clearly are indicative that the instrument herein was not discharged. The Supreme Court of Texas in *Fox* v. *Kroeger,* 119 Tex. 511, 35 S. W. (2d) 679 (1931), 77 A. L. R. 663, which involved payment of a note by an accommodation indorser, discussed the effect of such payment in the light of sections 119 and 121 of its Negotiable Instruments Law which are identical in language with ours cited above, stated:

"If either section 119 or section 121 were considered alone, the language might make each difficult of interpretation, but the two sections must be construed together, and in the light of each other, since they deal with the same subject-matter. When so construed, the manifest meaning is that the payment by the principal debtor or by the party accommodated discharges the instru-

> ment, but payment by a party secondarily liable, other than the principal debtor or party accommodated, does not discharge or extinguish the debt."

It is pertinent, too, to observe in *Fox* v. *Kroeger* the accommodation indorser, having paid the note, based his right of recovery *upon the note itself;* and while it is true that the case was an indorser-maker involvement, we think the case is significant because of its recognition of the principle that under the Negotiable Instruments Law payment by a party secondarily liable does not extinguish the debt and thus place the party seeking recovery in a position where he must apply to the conscience of the chancellor in a court of equity to re-vitalize the evidence of the indebtedness and thus necessitate invoking the doctrine of subrogation. The Virginia Court in *Gatewood* v. *Gatewood*, 75 Va. 407, recognizing a distinction between an assignment of a mortgage debt and a mere right of subrogation, remarked that a surety who pays a debt may require an assignment in equity and "although no such assignment or transfer is actually made, a court of equity will treat it as having been done." It would seem useless to require an equitable fiction where there has been an actual assignment as we have in the case at bar. Like the instant case, there had been an assignment of the note to the plaintiff in *Fox* v. *Kroeger*, but the principle enunciated by the Texas court in no wise stems from any rights under the assignment. While in that case the court did not express itself on the matter of the assignment, the Circuit Court of Appeals, Fourth Circuit, in *In re Wingert, et al.*, 89 F. 2d 305, in a case factually similar to the instant one, said, "The fact that one of the joint payees when called upon to pay under such an indorsement takes an assignment of the instrument does not, of course, enlarge the liability of the other or others or give the assignee any advantage over them." The court cites no authority for its statement. Moreover, it was not essential in that case for claimant to rely on the assigned instrument, and the assignment as a factor in the determination of the matter was of no importance and what the court said in relation thereto was in fact dictum. However, we accord signifi-

cance to the action of the bank in its writing on the back of the note that it was "paid by and assigned to P. R. Cost," for such action and language mirror definitely the intention of Cost that there should be no extinguishment of the note. The fact that Cost acquired the note after maturity did not affect its negotiability. Code, 1923, 98A, section 47. Hence, when the bank "assigned to P. R. Cost" the note, it transferred a negotiable note kept alive by statute as well as by intention.

We are cognizant of the rule enunciated by this Court in *Greenbrier Valley Bank* v. *Holt*, 114 W. Va. 363, 171 S. E. 906, wherein a judgment had been assigned by a judgment creditor to a judgment debtor who was secondarily liable on the instrument upon which the judgment had been based. There the court said that the "note became merged in the judgment" and quoted from 2 Freeman on Judgments (5th Ed.) 1166 that the note " 'has lost its vitality'." The reasoning employed to sustain the rule that payment of a judgment by any one of the judgment debtors extinguishes the judgment at law, is expressed in *Grizzle* v. *Fletcher*, 127 Va. 663, 105 S. E. 457, thus, "It is a union of debtor and creditor in the same person; and this operates to discharge the debt"; but payment of a note by a party secondarily liable comes within the purview of the legislative fiat which denies the extinguishment of the instrument. Hence, application of the rule where a judgment is assigned is not availing where a negotiable instrument is paid by and assigned to a party secondarily liable.

We must conclude, therefore, that Cost acquired from the bank a negotiable promissory note with all the vitality it had in the hands of the bank as holder thereof (including the right to maintain a proceeding thereon against his co-indorsers) except in so far as Cost's liability as a co-indorser detracted therefrom. As the holder of such note, under the language of the statute of limitations, a proceeding instituted thereon by Cost within ten years from the date when the right accrued could be maintained, which, in the instant case, is the due date of the note. Inquiry must, however, be directed as to whether the prayer

of the bill warrants recovery upon the instrument itself. "Relief can only be obtained under a general prayer where there are supporting allegations and the relief sought is not inconsistent with the special relief prayed for." *Atwater & Co.* v. *Fall River Pocahontas Collieries Co.*, 119 W. Va. 549, 564, 195 S. E. 99, 106, and cases cited. While it is true that the prayer specifically requests contribution of defendants, the gist thereof is that "plaintiff may have a decree for the payment of money against defendants." Since recovery upon the instrument itself is to be reflected by a money decree, we can see no inconsistency in permitting relief under the general prayer.

Defendants say that if the note is still alive, then this chancery proceeding must fail, for the reason that plaintiff has a complete and adequate remedy at law. Defendants overlook the fact that plaintiff seeks not only to recover a money decree against them but also to subject to sale in satisfaction of such decree certain real estate which plaintiff charges is in the name of defendant, Federal Land Bank of Baltimore, but for which, plaintiff charges upon information and belief, defendants have procured a deed. The bill alleges that there has been attachment placed upon the real estate and that there has been no attack thereon. It requires no citation of authority to sustain jurisdiction of a court of equity in such matters.

We reverse the decree of the circuit court dismissing plaintiff's bill of complaint, and remand the cause.

*Reversed and remanded.*

ROSE, JUDGE, concurring:

I fully concur with the majority as to the necessity of a reversal in this case, but I would place the plaintiff's right to proceed on the note wholly upon equitable principles which became applicable immediately when he, an accommodation indorser, was called upon to, and did, pay the note. I am not at all certain that any additional rights accrued to him by reason of the pretended "assignment" of the instrument, or that any vested in him by virtue of any statute, applicable to the situation.

The note was paid, not sold. Banks, in regular course, do

not sell notes, but require their payment by those liable therefor. In this case, the plaintiff expressly says, both in his affidavit for attachment and in his bill of complaint, that the bank demanded payment and that he did pay. He nowhere pretends that he purchased the note. These statements are made in the bill of complaint in great detail, covering two full pages in the record, and are followed by allegations of subsequent demands for contribution from the defendants. Then ensues another numbered paragraph of the bill alleging that on the day on which the note was paid, the bank *"after receiving* from the said P. R. Cost the said sum of Five Thousand One Hundred Twenty-Two and 44-100 ($5,122.44) Dollars, assigned and endorsed said note, without recourse, to the said P. R. Cost." (Italics supplied). This unquestionably shows that the note was paid before it was attempted to be assigned. In this situation, what could the bank assign? What right, title or interest in the note had the bank left which could be the subject of an assignment? Could the bank have assigned the note to a third party so as to vest in him any character of right? And, if such an assignment to a third party would have been ineffective, how could it have any greater efficacy when made to the plaintiff? True, the note was not, by its payment, actually discharged for all purposes, nor as to all parties, but all the rights of the bank were thereby discharged. It could not, itself, maintain any sort of action on the note, or make any claim by virtue of it, hence, it could not transfer or confer upon anyone else any such rights with relation thereto. The payor acquired undoubted rights by his payment, but they were such rights only as accrued to him by the act of payment, independent of the "assignment." The assignor of a past due negotiable instrument, even without recourse, assumes substantial liabilities. Code, 46-5-6; *Houston* v. *Lawhead,* 116 W. Va. 652, 182 S. E. 780. We should, for that reason also, avoid a judicial pronouncement to the effect that the transaction here involved is in legal effect an assignment of the note itself.

Nor are we cited to any statute which may be construed as having created any rights in the plaintiff by reason

of the payment of the note. Section 3, article 8, chapter 46, Code 1931, provides that: "When the instrument is paid by a party secondarily liable thereon, it is not discharged; but the party so paying it is remitted to his *former rights* as regards all *prior parties* * * *." (Italics supplied). This sentence postulates precisely the plaintiff's situation. He was secondarily liable; he paid the note; he therefore, is now "remitted to his former rights as regards all prior parties." But who are the "prior parties" in this case? The MacGregors were joint payees with the plaintiff and became with him joint endorsers. They never were "prior parties" as to him. The only prior party was the maker of the note. And what were Cost's "former rights"? He was merely an accommodation payee and indorser and never had any rights on the note against any party thereto prior to his payment thereof. This statute, therefore, avails the plaintiff nothing against the defendants, and no other statute is cited as a source of any rights accruing to him by virtue of his payment of the note.

Hence, I am persuaded that the plaintiff acquired no rights which he could enforce on or through the note, either by the "assignment," or by any statute applicable to the case. But equity, under these circumstances, creates for him a remedy on the note. In 60 C. J., pp. 754, 755, is found a readily available statement of the correct basis of the plaintiff's right to relief in this suit: "While the English rule, refusing subrogation to the debt, * * * has apparently been followed in some jurisdictions, * * * it is the widely accepted American rule that, no matter what the effect of payment at law, it is, in equity, by virtue of the doctrine of subrogation, to be regarded as a purchase by the surety, and operating as an equitable assignment to him of the debt and all its evidences and incidents, so that he may enforce the same to the extent necessary to obtain reimbursement from the principal, or contribution from the cosurety."

The plaintiff has pleaded, distinctly and fully, abundant facts to entitle him, in equity, to be subrogated to all rights on the note which the bank had against the de-

fendants prior to its payment by him, and which may be necessary to equalize the burden of the note's payment between him and them; and he is, therefore, entitled to prosecute his suit on that theory under the prayer for general relief.