HENRY WALKER PARK ASSOCIATION, a corporation, plaintiff-
appellee; FREMONT TOWNSHIP, JOHNSON COUNTY, et al.,
intervenors-appellees, v. EFFIE SHELLADY MATHEWS
et al., appellants.

No. 49469.

(Reported in 91 N.W.2d 703)

1248

July 28, 1958.

William H. Wellons, of Muscatine, and F. J. MacLaughlin, of Davenport, for appellants.

Edward L. O'Connor, of Iowa City, for plaintiff-appellee, and Edward F. Rate, of Iowa City, for intervenors-appellees.

Thompson, J.—The village of River Junction in Johnson County was platted in 1873, by Henry Walker and others. All of the land involved in the present controversy was then owned by Henry Walker. River Junction can hardly be said to have reached the status of a "ghost town", since a ghost is defined as the disembodied spirit of a deceased person; necessarily someone

who was once alive. There were, however, a few buildings, a post office, and until about 1936 a railroad station. The post office departed with the railroad station, and a Methodist church building, while still standing, seems now to have been out of use for several years.

The controversy here centers around Block 2 of the original plat, and Front Street, which bounded Block 2 on the south. On July 14, 1910, Henry Walker, a venerable and highly respected citizen of Johnson County, with his wife, deeded to the Trustees of the Henry Walker Park Association all of Lots 1, 2, 3, 4, 5 and 6 in Block 2, except for the west 13 feet of Lots 3 and 4; and all of Oak Street, which bounded Block 2 on the east. On December 30, 1910, the same grantors conveyed to the same grantees the west 13 feet of Lots 3 and 4, in Block 2, except the west three feet thereof, and the north one half of Front Street along the south boundary of the park. At the time of the first conveyance there was no corporation having the name Henry Walker Park Association in existence; but evidently a voluntary association with the same name was formed for the purpose of receiving and caring for the park. On August 25, 1910, a corporation not for pecuniary profit was formed and duly chartered. No conveyance of the park lands deeded by Henry Walker and wife on July 14, 1910, from the voluntary association to the corporation was ever made; and the first error urged by the defendants is that the corporation has no interest in the park and is not the real party in interest in this action.

I. The defendants-appellants concede that when a corporation is formed to take over the property of a voluntary association no conveyance is necessary, if the action is taken by unanimous consent of all the members of the association. Red Polled Cattle Club of America v. Red Polled Cattle Club of America, 108 Iowa 105, 109, 78 N.W. 803, 805. But they say evidence of such consent is entirely lacking here. We do not agree. The corporation has been in existence for some forty-six years, without any protest from any member of the Association. As said in the Red Polled Cattle case, supra: "While all did not vote for it, none voted against it, and, in pursuance of the adoption of the resolution, its purpose was carried out by an

incorporation without objection and with the full purpose clearly known." While there was no resolution of transfer here, the evidence sufficiently shows that the property was taken over and has since been managed by the corporation, without protest.

It is true the affairs of the corporation were handled quite informally, and perhaps the same minute book which was originally opened by the association has been used by the corporation without any clear line of demarcation. Some confusion also arises because the managing officers of the association were apparently trustees, and the articles of the corporation provide that its affairs were to be conducted by three trustees. But generally the evidence shows that it was the corporation which was in charge. Our conclusion on this point is the same as that of the defendant Effie Shellady Mathews who with her husband claims title to Front Street and to what is known in the record as the "parking lot", the two items of realty around which this litigation centers. On June 21, 1956, she caused to be printed in a newspaper, the Lone Tree Reporter, a notice that she was the owner of the park real estate conveyed by Henry Walker and wife in 1910. She explains this in her testimony by saying she was informed that after fifty years—the length of the life of a nonprofit corporation under Iowa statutes—the park would revert back to Henry Walker's heirs. She had procured deeds from the other heirs. The notice which she published referred to the corporation; and, while her advice on the legal aspect of the matter proved erroneous, as she now concedes, it does clearly appear that she herself thought it was the corporation which was holding the title. We agree with her in this latter conclusion.

II. The real fighting points in the case turn upon questions of dedication of Front Street and of the parking lot. Block 2 in the original plat of River Junction was bounded on the north by Main Street, on the east by Oak, on the south by Front, and on the west by Church. Lots 1 to 6 inclusive comprise slightly more than one half of the block, extending from Oak Street west. The plat shows this tract to be 180 feet in width. It is these lots, excluding the westerly three feet thereof, and including

Oak Street, which were conveyed to the Henry Walker Park Association and are still owned by it, Effie Shellady Mathews having by her testimony abandoned any claim to them. West of the six lots above described the plat shows a strip apparently intended to be an alley, and west of it 160 feet which was not divided into lots. The north part of this tract, from Church Street on the west to the park property on the east and extending from Main Street on the north to a line 109 feet north of Front Street, is occupied by the Fremont Township Cemetery. South of the cemetery the land running south to Front Street and extending 60 feet east from Church Street is owned in part by the Methodist Church and in part by one Rayner. This leaves, east of the church and Rayner lands, south of the cemetery, west of the park, and north of Front Street, a rectangular tract said by some of the witnesses to be about one-half acre in extent, which is the parking lot involved here. The civil engineer who testified said the south cemetery line is 109 feet north of Front Street. The width from the west line of the park to the east line of the church and Rayner lots is 124 feet; so that the parking lot is 109 feet north-and-south by 124 feet east-and-west.

The defendant Effie Shellady Mathews is a granddaughter of Henry Walker who at one time owned all the real estate involved here and who platted the village of River Junction. Upon his death in 1911 he left a life estate in his remaining lands to his daughter, Mary H. Shellady, with remainder over upon her death to her children, of whom Effie Shellady Mathews is one. She and her husband, the defendant Gilbert E. Mathews, are now the owners of title to such realty as Henry Walker had at the time of his death, including much of the land surrounding Block 2. Marsh E. Mathews is their son, and is apparently made a defendant because he has been active in the matters which have brought about this lawsuit.

The park association has at times been active and at others somewhat dormant. The park is improved with two buildings, and picnics and other outdoor activities have been held there from time to time, including Old Settlers picnics. The park is surrounded by a fence. For many years there was a gate on the

south side of the park opening from Front Street; but some time before the trial this gate was moved to the west fence, opening from the parking lot. The engineer said the gate is ten feet wide and is seventeen feet north of the southwest corner of the park. On the east of the park is agricultural land. Main Street lies on the north, and the defendant Marsh E. Mathews testified access to the park might be had from it, although he says it would be by sufferance and "If I choose to, I could withdraw the permission at any time."

In October or November 1956 the defendant Marsh E. Mathews, acting 'for himself and the other defendants, built a fence about 63 feet east of the west line of Block 2, from the south line of the cemetery fence southerly across Front Street. This fence is about three feet east of the church and Rayner properties. It effectually closes Front Street east of the fence, and shuts off access to the parking lot, and to the park through its main gate. It also prevents access to the cemetery from the south, since the only way of reaching it from that direction was by coming along Front Street from the west to the parking lot, then traveling northerly across the lot to the large gate which the engineer locates in the south fence line of the cemetery 100 feet east of the west line of Block 2. This gate is in reality three gates: a large center gate 10 feet wide, flanked by two 4-foot gates. It was installed in 1914 by Louisa Cray as a memorial to her father, David Sweet. It is the only entrance to the cemetery large enough to admit a hearse or other vehicle. There is a small 4-foot gate on the west side of the cemetery.

III. Two major questions arise with regard to the use of Front Street and of the parking lot. We shall deal first with the issue concerning Front Street. This street was formally dedicated to public use by the original plat of River Junction. "The filing of a plat * * * is the tender of an easement in the land set aside for streets, to an unincorporated village." Town of Kenwood Park v. Leonard, 177 Iowa 337, 343, 158 N.W. 655, 659.

It is true, as appellants urge, there must be an acceptance of the platted streets by the public. Bowersox v. Board of Supervisors of Johnson County, 183 Iowa 645, 649, 167 N.W.

582, 584. But this acceptance may be by some formal action, as by the council of an incorporated city or town, or by public use. And this use need not be continuous or heavy. "Even where there is no formal acceptance of a street [in an unincorporated village there could be no such acceptance] * * * and public use is relied on to show acceptance, the use need be only such as the public wants and necessities demand." (Citations) Kelroy v. Clear Lake, 232 Iowa 161, 173, 5 N.W.2d 12, 19, 20. We find also on the same pages in the Kelroy case these pertinent statements: "Regarding use of this street in the early days, we have said repeatedly that many streets in new plats were dedicated with no serious thought of their immediate improvement or extensive use, but largely to accommodate future needs." (Citations) "In the early days streets were frequently subjected to uses somewhat inconsistent with exclusive public rights therein." (Citations)

We proceed to examine the situation as to Front Street easterly from its intersection with Church Street at the southwest corner of Block 2, to the southwest corner of the park property. The appellants concede that from time to time picnics were held in the park, at which times the usual procedure was to "enter onto Front Street from Church Street and proceeding east to the Henry Walker Park." Also it is conceded that a Chautauqua, a medicine show, a small circus, Sunday school conventions and church basket picnics were held there; and that in the past twenty years there have been forty burials in the cemetery, for at least some of which the large south gate was used. This would necessitate entering Front Street at the intersection with Church and crossing the parking lot. Persons visiting the park or the graves in the cemetery also used the same means of entrance and exit.

It is true there are obstructions in the north half of Front Street, consisting chiefly of trees. The defendants say the use of the street has been "indeed casual." Nevertheless, and without detailing the evidence further, we think there is a sufficient showing of acceptance by use to require a holding that the easement tendered by the filing of the plat is still in effect as to Front Street. "Failure of small towns or villages to remove

obstructions from streets or alleys, failure to improve them before public convenience requires it, will not amount to either an abandonment or an estoppel." Kuehl v. Town of Bettendorf, 179 Iowa 1, 9, 161 N.W. 28, 31. "There was such traffic over it [the street] as the public wanted and as necessities demanded." Kelroy v. Clear Lake, supra, page 170 of 232 Iowa.

IV. A somewhat more difficult problem is presented by the matter of the parking lot. There was no formal dedication of this tract; but the trial court found there was a common-law dedication. Some additional facts become pertinent here. The record shows that for many years there was a row of hitching posts along the east side of this tract adjacent to the park. The cement foundations of these posts are still in place. During the horse and buggy days it was the custom to tether horses at these posts when their drivers were visiting the cemetery or in the park. Since then the space has been used similarly for parking automobiles. The defendant Effie Shellady Mathews was at the time of the trial 72 years old. Marsh E. Mathews, her son, was 53. The age of Gilbert E. Mathews, the husband of Effie Shellady Mathews, is not given. All of these parties had lived many years in the immediate vicinity of River Junction. Henry Walker lived one-quarter mile south of River Junction for many years prior to his death in December 1911. Mary H. Shellady, the daughter of Henry Walker and the mother of Effie Shellady Mathews, who held a life estate under the will of her father, also lived in the immediate neighborhood. She died about two years before the trial in the district court; and the record shows no controversy over the use of Front Street or the parking lot during that time, or until the present defendants came into possession and full ownership.

It seems evident that neither Henry Walker nor Mary Shellady made any complaint of the use of the street or the parking lot. Such uses were visible and must have been known to them. It is also of some significance that Henry Walker, in platting River Junction, did not see fit to lay out any lots on what may be roughly described as the west one half of Block 2. He did later sell a strip 60 feet wide east of the west line of the block to Rayner; but this left the disputed area now known

as the parking lot not marked off by lot lines and unsold. All the land to the north, south, east and west of the west one half of Block 2 was on the plat divided into lots; but this area was left open.

It is admitted in the pleadings that the cemetery has been in use for more than 100 years, and that it is supported by public tax funds.

■ It is correctly urged by the defendants that the evidence to establish a common-law dedication must be clear and cogent, and that the intention to dedicate must have existed at the time of the beginning of the user which is relied upon to show dedication. Dugan v. Zurmuehlen, 203 Iowa 1114, 1118, 1119, 211 N.W. 986, 988. We also agree that user alone is not sufficient to establish an easement by common-law dedication. There must be something more.

■ But, granting the application of these rules, we find sufficient support for the trial court's finding that there was such a dedication. The question is, of course, whether the facts shown meet the tests set up by the applicable law. We have held in some cases, such as Culver v. Converse, 207 Iowa 1173, 224 N.W. 834, that they did not. But here we have what we think substantial and strong evidence of an intent to dedicate the parking lot to the public use, and of acceptance of the offer to dedicate by many years user. It has been pointed out that Henry Walker did not divide the tract into lots, as he and his fellow owner did with the remainder of the lands in the original plat. The cemetery association built its main gate on the south side of its land, opening on the lot and accessible only from it. It was and is the only gate to the cemetery large enough to permit the entrance of a hearse or other wheeled vehicle; and it has been used frequently, both for funerals and by those visiting the cemetery. The lot was used for tethering horses and is now used for parking cars; and hitching posts with cement settings were at one time in general use on the lot, the cement being still visible. The same use has been made since the establishment of the park in 1910. The main entrance to the park is now on its west side, also accessible only through the parking lot.

During all of this time, Henry Walker, and later his successors in title, have lived in the immediate vicinity. They made no protest; it was not until the death of the life tenant about two years before the trial that any voice was raised against it or any attempt made to prevent the use. We have said: "* * * if, in addition to the long-continued use, it be shown it has been so used with the knowledge and consent of the proprietor—in other words, if his conduct is reasonably explainable only on the theory of his consent or upon the theory of his waiver or abandonment of his right for the benefit of the public—he will not thereafter be permitted to repudiate or deny its legal effect." Kinsinger v. Hunter, 195 Iowa 651, 654, 192 N.W. 264, 265. This was quoted with approval and followed in Cohen Bros. Iron & Metal Co. v. Shackelford Brick Co., 197 Iowa 674, 684, 198 N.W. 318, 323. The defendants paid no taxes on the lot until 1957. It was first assessed for the 1956 taxes; prior to that time this particular tract was not assessed to anyone. Payment or nonpayment of taxes is not conclusive, but the matter has some bearing upon the intent to dedicate.

Of course the dedication must be to the public use, and the acceptance must likewise be by the public. "User by the public at large such as is generally known, which is continuous, * * * will establish the owner's intention to dedicate." City of Sioux City v. Tott, 244 Iowa 1285, 1296, 60 N.W.2d 510, 517. In this case we held there was no sufficient showing of use by the public; the way served only one house. But it is sufficient if enough citizens are affected by a nuisance to constitute the public, even though they are but a small fraction of the entire population. State v. Jacob E. Decker & Sons, Iowa, 191 N.W. 359, 361. In the instant case Front Street at the point in question and the parking lot were used by the members of the park association, by their guests, by those who attended picnics, entertainments, and other functions in the park; by those who had occasion to use the cemetery to bury their dead or to care for the graves. They constituted a considerable portion of the community. The cemetery is supported by public tax funds, and was open to use by the public generally. The use of the street and of the lot was clearly by the public, and so the acceptance

of the implied dedication was by the public. See Weehawken Township v. Erie Railroad Co., 20 N. J. 572, 120 A.2d 593, 598; Mumpower v. Housing Authority, 176 Va. 426, 11 S.E.2d 732, 741; State v. 4.7 Acres of Land, 95 N. H. 291, 62 A.2d 732, 735; 35 Words and Phrases, Public, pages 12 to 24 inclusive. In Gillespie v. Duling, 41 Ind. App. 217, 83 N.E. 728, 730, it is said that the expression "the road is open to public use" means to all those who have occasion to use it.

V. The defendants urge that the matter of dedication of the parking lot is not within the pleadings. It is elementary that an issue should not be considered by the court unless it is fairly raised by the pleadings. Both plaintiff and intervenors allege a right of access from Front Street to their respective properties, which would necessarily be across the parking lot. The intervenors seem at some points to rely upon a prescriptive right. Both plaintiff and intervenors ask for general equitable relief.

We think the trial court was correct in considering and determining the question of common-law dedication of the parking lot. The facts bearing upon the issue were fully developed. Effie Shellady Mathews herself testified that the south gate has at times been used as the "usual access" to the cemetery. She said the west gate is a gate for pedestrians, but the south gate is wide enough for a hearse to enter. "There are a large number of graves in the cemetery. It has been used as a public cemetery for a long period of time. I have seven relatives buried right in front of that gate. I suppose they were taken through that gate. * * * The route would be south on Church Street, east along the south side of the church [presumably Front Street] to this parking ground, north up to this gate. I suppose I have seen hitching posts along the west side of the Park Association property." There is much other evidence from all parties as to the use of the parking lot.

A prayer for general equitable relief is to be construed liberally. It will often justify the court in granting relief other than that contained in the specific prayer. Skemp v. Olansky, 249 Iowa 1, 5, 6, 85 N.W.2d 580, 583. It is said: "Under the general prayer, the court may grant any relief fairly conformable with the case made in the bill. Special prayers may

1258

be disregarded where the general prayer is sufficient for relief upon the equity shown by the bill." 19 Am. Jur., Equity, section 227, page 181. See also 30 C. J. S., Equity, section 607, pages 1003, 1004; Homan v. Employers Reinsurance Corp., 345 Mo. 650, 668, 136 S.W.2d 289, 301, 127 A. L. R. 163, 178 ("Under a prayer for general relief the court may grant any relief consistent with the pleadings and evidence."); Cost v. MacGregor, 124 W. Va. 204, 19 S.E.2d 599, 140 A. L. R. 882. It is true that the relief granted under a prayer for general equity must be consistent with the pleadings and the evidence and such as will not surprise the defendant. Skemp v. Olansky, supra; Paintin v. Paintin, 241 Iowa 411, 413, 414, 415, 41 N.W.2d 27, 16 A. L. R.2d 659.

We then consider whether the pleadings and evidence in the case at bar justify a finding of common-law dedication of the parking lot. We have set out the material facts shown, which clearly support such a holding. The petition of the plaintiff contains both special and general prayers. The intervenors ask the same relief. The plaintiff's petition, in its Division IV, with which we are concerned here, alleges the dedication of the plat of River Junction to the public, the blocking of Front Street by the fence erected by the defendants, and the consequent denial of access to plaintiff's park through its main gate on the west side. It must be kept in mind that access to this gate can be had only across the parking lot. Merely forbidding the maintenance of the fence across Front Street, if the parking lot were not available, would be of no aid to the plaintiff or intervenors.

The intervenors' petition alleges the long-continued use of the cemetery, the fact of the knowledge of defendants thereof and of the building of the large south gate, which can be reached only across the parking lot; that no objections were made to the use of the lot; and claims a prescriptive right to use Front Street and the lot for access to its grounds. Its petition also contains this important allegation: "That fence also interferes and obstructs Front Street * * * and interferes with access from Front Street to the southerly entrance to said *cemetery across land which has also been formally, properly and legally dedicated to the public.*" (Italics supplied.)

It is the averments of the petition rather than the special prayer which ordinarily govern in determining whether relief can be granted under the general prayer. 19 Am. Jur., Equity, section 227, page 181, supra. While the evidence here may fail to show a formal dedication we think it does show a "proper and legal" dedication. The "land" referred to in the quoted part of the pleading is, of course, the parking lot. We therefore have allegations in the petition of intervention, supported by ample evidence, which justify a finding of common-law dedication, under the prayer for general equitable relief.

VI. Defendants urge that in any event they should be required only to permit ingress and egress to Front Street and the parking lot, and gateways in the existing fence should be held sufficient. It is sufficient answer to this that the formal dedication of the use of Front Street and the common-law dedication of the parking lot created unimpeded easements. There is no indication of any intent on the part of the dedicators to restrict the free use of the street and lot by the partial barrier of gates.

VII. Some contention is made that the title to the entire parking lot is not in the defendants Effie Shellady Mathews and Gilbert E. Mathews. This was beyond the issues in the case, and we do not decide it. Other questions concerning title to the park property itself are not argued by appellants.

The decree of the trial court was in accordance with the governing law and the facts, and is in all respects affirmed.— Affirmed.

All JUSTICES concur.