Milo A. FERRARI and Leah Ferrari,
Appellees,

v.

E. Earl MEEKS and Mary June Meeks, and
Iowa Power and Light Compa-
ny, Appellants.

No. 54150.

Supreme Court of Iowa.

Nov. 10, 1970.

Robert D. Hall, Des Moines, for appellants.

Donald W. Baird, Des Moines, for appellees.

BECKER, Justice.

Plaintiffs, as owners of certain real estate in Polk County, Iowa, bring this action in equity seeking an injunction to en-

join defendants from trespassing on or using portions of their property.

Defendants own the contiguous property. They deny plaintiffs own the property claimed, assert ownership in themselves on grounds of adverse possession or acquiescence, ask that title to the disputed property be quieted in them, seek an injunction against certain actions by plaintiffs and ask for damages.

After trial to the court the judge found in favor of plaintiffs and enjoined defendants from using the property in question. No action was taken in connection with the claimed money damages asserted by defendants in their counterclaim. We reverse and remand.

A rough diagram of the property involved will aid in understanding the issues. The shaded area comprises the disputed

[A3016]

property. It consists of the road into the home owned by defendants and a small

1. The Iowa Power and Light Company and Polk County were both made parties to the action but by stipulations have made agreements with both parties as to the action to be taken at the close of litigation.

strip east of the boundary of defendants' land. The two areas must be treated separately because the evidence, as it affects each area, is different.

I. In this de novo review we give weight to the trial court's findings of fact but are not bound by them. Rule 344(f) (7), Rules of Civil Procedure. Our study of the record in this case compels different findings.

Plaintiffs hold record title to the area in dispute. Defendants do not seriously dispute this record title ownership and the fact is taken as established.

■ But this does not dispose of the matter. Defendants claim title either by acquiescence or adverse possession. Record title ownership alone by plaintiffs does not bar defendants' claim.

Concannon v. Blackman, (1942) 232 Iowa 722, 724, 6 N.W.2d 116, 117, states: "* * * The issue of a boundary by acquiescence may be raised, tried, and adjudicated in this special action, even though there may be no dispute as to the boundary according to the deeds or the survey."

II. Plaintiffs allege defendants "with the permission and consent of the plaintiffs and their predecessors in title * * * used a portion of said real estate for purposes of ingress and egress for a period of 10 years." A similar allegation is made against the Iowa Power and Light Company in relation to the power line installed defendants' request. The evidence does not sustain these allegations.

Mr. Ferrari testified that at the time of acquisition of this property he was buying what a survey would show; he was aware a 35 to 40 foot strip was in use by defendant as a driveway and for parking and was aware of the fences located as shown on the accompanying diagram. (The length of the fence on the south side of the road is not shown of record). After acquiring the property plaintiff had the land surveyed, removed the north fence along the

roadway and asserts ownership of the entire disputed area. Other than proof of survey plats by an engineer the foregoing evidence made plaintiffs' case.

Defendants denied the allegations of plaintiffs' petition. Their main witness was Charles McGriff who sold the property to plaintiffs.

Mr. McGriff gave somewhat inconsistent testimony concerning the history of the use of the disputed land which we shall try to summarize. He stated the property sold to plaintiffs was owned by his father since about 1909. He acquired title at his father's death in 1951 and subsequently deeded the property to plaintiffs in two separate transactions.

The property now owned by defendants was formerly owned by one DeNeuso who built a house on it in about 1915. DeNeuso used the 35 to 40 foot roadway over McGriff's property to enter S.E. 14th Street. This roadway has been in continuous use as access to the defendants' home ever since. At about the same time, and over 40 years ago a fence was built along the north side of the roadway in question. This fence was wholly maintained by the McGriffs during this entire time. The gate and fence on the east side of defendants' property was also erected more than 40 years ago, was jointly maintained by the McGriffs and DeNeusos and was considered by McGriff to be the boundary.

## OWNERSHIP OF THE ROADWAY

Although Mr. McGriff at one time made a written statement asserting that neither he nor his father had ever claimed the property south of the north fence line or the road in dispute and considered the fence as a boundary fence, he also stated that he and his father had always used the roadway as a method of ingress and egress to their property lying east and north of defendants' property and that he thought defendants had an easement over the land. The most definitive statement by Mr.

McGriff concerning the genesis of the use of this road is as follows:

"Back when I was ten or twelve years old they had quite a controversy concerning this road. I remember my father talking about a small sum of money. DeNeuso owned the Meeks' property at that time and this was between DeNeuso and my father. After that time this fence on the north of the road was put up and following that time Mr. DeNeuso and then Mr. Meeks have used that road. * * *.

"At the time I sold this property, I figured Meeks had an easement or right-of-way for the entire length of that road, but I just didn't know whether he owned title to it; but after I had it surveyed to give Milo a legal description of his land, it showed that it wasn't taken off."

■ We find no substantial evidence that defendants' use of the disputed roadway was permissive only. There is substantial evidence that such use was without permission of or consultation with plaintiffs or their predecessors in title. There was no permission to be revoked. Plaintiffs did not show any acts of trespass and are therefore not entitled to an injunction.

In Schmitt v. Kirkpatrick, (1954) 245 Iowa 971, 977, 63 N.W.2d 228, 231, we said: "It is elementary that a court of equity will not resort to the granting of injunctive relief unless it appears there is an invasion or threatened invasion of a right, and that substantial injury will result to the party whose rights are so invaded, or such injury is reasonably to be apprehended. It is equally well settled that the burden is upon him who asks this relief to prove these elements of his case. We have announced and followed these rules in many drainage cases."

■ III. Defendants were entitled to negate plaintiffs' allegations of permissive use. In doing so we find they proved the creation of a roadway easement by prescription.

■ We recognize such a result is not within the specific requests of the prayer of either the petition or the counterclaim. Both pleadings contained a prayer for general equitable relief. In Henry Walker Park Assn. v. Mathews, (1958) 249 Iowa 1246, 1257–1258, 91 N.W.2d 703, 711, we said:

"A prayer for general equitable relief is to be construed liberally. It will often justify the court in granting relief other than that contained in the specific prayer. Skemp v. Olansky, [249] Iowa [1, 5, 6], 85 N.W.2d 580, 583. It is said: 'Under the general prayer, the court may grant any relief fairly conformable with the case made in the bill. Special prayers may be disregarded where the general prayer is sufficient for relief upon the equity shown by the bill.' (Authorities cited). ('Under a prayer for general relief the court may grant any relief consistent with the pleadings and evidence'); Cost v. MacGregor, 124 W.Va. 204, 19 S.E.2d 599, 140 A.L.R. 882. It is true that the relief granted under a prayer for general equity must be consistent with the pleadings and the evidence and such as will not surprise the defendant. (Authorities cited)."

Here the possibility of a finding of an easement comes as no surprise to plaintiffs as they argue against such finding in their brief. Their affirmative allegations, if proved, would have negated such a finding. They were not denied an opportunity to prove such negation.

IV. In concluding defendants established existence of an easement by prescription we do not overlook our statute, section 564.1, Code, 1966 or our prior cases, all of which hold an easement by prescription cannot be proved by showing use alone. In Phillips v. Griffin, (1959) 250 Iowa 1350, 1354–1355, 98 N.W.2d 822, 825, we said:

"Claimant must show more than use. To comply with 564.1, Code of 1958, I.C. A., there are two other requirements: 1.

That he claim his easement as his right, and this must be established by evidence distinct from and independent of its use. 2. That the party against whom claim is made must have express notice before 10 year adverse possession; not alone of the use, but of the claim of right to use against objections and protest of owner."

In addition to the showing an original controversy followed by use for over forty years and the installation of power and telephone lines without the servient owners' permission, there is the testimony of Mr. McGriff who, with his father, owned plaintiffs' property for over 50 years. He testified he understood defendant had an easement or right of way for the entire length of the roadway. McGriff, as plaintiffs' predecessor in title had notice "not alone of the use but of the claim of right to use against objections and protests of the owner."

V. Defendants' purchase of the property in 1942 is an additional factor to be considered. Loughman v. Couchman, (1951) 242 Iowa 885, 889, 47 N.W.2d 152, 154, states:

"If it were true that Loughman's use of the drain was merely permissive while Johnston owned the farm, such permissive use became adverse upon his transfer of the farm in 1926. 28 C.J.S., Easements, § 14d(2), page 656. See also 17 Am.Jur., Easements, section 67. There is no evidence that any owner of the farm informed Loughman he might continue to use the drain as a mere favor nor of any prohibition of its use before Couchman obstructed the drain in 1949."

It is true this is a roadway easement and Loughman v. Couchman involved a drainage easement. Further, Simonsen v. Todd, (1967) 261 Iowa 485, 154 N.W.2d 730, weakens the quoted statement to some degree as it applies to roadway easements. However, the circumstance of sale is not eliminated as a factor to be considered and we consider it here. That defendants' predecessors in title claimed some interest

in the roadway is evident from the land contract of sale which, filed August 30, 1945, contained the following statement:

" '—and such interest as the parties of the first part have (but parties of the first part do not agree to warrant the title to said interest) to the right-of-way from the main road running east on the north side of the 30 acres lying north of the above described ground, according to the description in the deed in Book 505, Page 340 of the Polk County, Iowa records. * * *.' " Thereafter defendants used the roadway as of right for over 20 years. We do not hold, as the Loughman case would seem to indicate, that this circumstance is alone determinative. But as indicated, we view it as an important circumstance to be considered.

VI. On the other hand defendant counterclaimants' claim to absolute ownership of the road must fail for lack of proof. Mr. McGriff's testimony is not strong enough to establish either adverse possession under claim of right or acquiescence. Both sets of property owners used the road without permission of, or regard to, the other. The fence on the north side of the road was not maintained as a boundary line or partition fence which under our chapter 113, Code, 1966, is customarily maintained by the adjoining owners. In short defendants never asserted dominion over the disputed road except to use it as a roadway. Plaintiffs have record title ownership of the 35 foot roadway subject to an easement in defendant property owners for road and utility purposes.

### EAST PROPERTY LINE OF MEEKS' PARCEL

VII. We consider the problem of the narrow strip on the east edge of the Meeks' place as a wholly different matter. There is strong evidence the fence immediately east of the Meeks' property has been acquiesced in as the true boundary between the properties for at least 40 years. Each property owner maintained one half of the

**206**

fence. Mr. McGriff stated he regarded the fence line as the true boundary on the east side of Meeks' place. Careful cross-examination weakened this testimony but on this point we think Mr. McGriff's testimony, taken as a whole, was quite clear. The eastern fence was a boundary fence and was so regarded.

Mr. Meeks, as owner of the property since 1942, also stated he regarded the east fence as the true boundary line. Olson v. Clark, (1961) 252 Iowa 1133, 1136, 109 N. W.2d 441, 443, states:

" ' * * * Where two adjoining owners for 10 years or more mutually acquiesce in a line, definitely marked by a fence or in some other manner as the dividing line between them, such line becomes the true boundary although a survey may show otherwise and neither party intended to claim more than called for by his deed. (Cases cited).' "

As to the eastern strip judgment should have been entered quieting title in defendants.

 VIII. Defendants' request for an injunction against plaintiffs' change in the water course was properly dismissed but on remand the dismissal should be without prejudice to renew application if continuing or further damage ensues. Although defendant showed the bank built by plaintiffs caused clay and mud to wash into his yard he also stated:

"The ground out toward this barn now stays swampy. This silt wash starts about fifty feet behind the house and on south. At that point he has got it stopped and it hasn't washed any more, but I am afraid it would with excessive rainfall." The record does not necessitate injunctive relief at this time. Cf. Schmitt v. Kirkpatrick, (1954) 245 Iowa 971, 63 N.W.2d 228; Rosendahl Levy v. Iowa State Highway Commission, (1969 Iowa) 171 N.W.2d 530.

IX. Defendants' claim for damages for the removal of the north fence along the road was properly ignored. The testimony is the fence belonged entirely to the Ferrari property. Plaintiffs had a right to remove it.

As to the damage caused by wash of clay and gravel over defendants' property, defendants did show there was some damage. No evidence was introduced on which a dollar amount could be predicated. In the absence of such evidence the claim for damages was properly ignored. B–W Acceptance Corp. v. Saluri, (1966) 258 Iowa 489, 498, 139 N.W.2d 399.

This case is remanded with instructions to enter judgment consistent with this opinion.

Reversed and remanded.

All Justices concur.